[No. 15554.  Department One.  March 30, 1920.]

*In the Matter of the Adoption of*
ISABEL RUTH DINGMAN.

LEONARD DINGMAN, *Appellant*, v. REMI A. GOKEY *et al.,*
*Respondents.*[1]

ADOPTION—JUDGMENT—RECITAL OF FACTS—STATUTES. Under Rem. Code, §§ 1696 and 1698, providing for the adoption of a minor by "any inhabitant of this state," and for an order of adoption "setting forth the facts," the failure of the order to set forth the jurisdictional facts does not render the order void, the requirement being merely directory and the superior court being a court of general jurisdiction.

SAME (4)—CONSENT OF PARENTS—SUFFICIENCY. The written consent of a father to the filing of a petition for the adoption of his infant child is in effect consent to the adoption, where it further recites that he surrenders and gives the child to the adopting parents and relinquishes all right to it and to its services.

[1]Reported in 188 Pac. 755.

17—110 WASH.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered April 14, 1919, in favor of the defendants, denying the vacation of an order of adoption, after a hearing before the court. Affirmed.

*Turner, Nuzum & Nuzum,* for appellant.

*D. R. Glasgow,* for respondents.

PARKER, J.—Leonard Dingman filed, in the superior, court for Spokane county, his petition seeking the setting aside of an order of adoption made and entered, as appears by the recitals therein, by his consent, by that court on November 19, 1918, whereby the adoption of his minor child, Isabel Ruth Dingman, by Remi A. Gokey and Mary Emma Gokey was ordered and decreed. The relief sought is rested upon the ground that the order of adoption is void for want of proper setting forth of facts therein, and that Dingman's consent to the adoption was obtained by undue influence and at a time when he was not mentally competent to legally give such consent. The matter being heard in the superior court upon the petition, the records and files in the original adoption proceeding and the evidence introduced in behalf of the respective parties, and thereupon submitted for final decision upon the merits, it was ordered and adjudged that the relief prayed for be denied and the petition to set aside the order of adoption be dismissed. From this disposition of the matter, Dingman has appealed to this court.

Isabel Ruth Dingman, the child whose adoption is here in question, was born on September 24, 1917. Her mother died in Spokane county on November 12, 1918, leaving Leonard Dingman, her husband, as the child's only surviving parent. On November 19, 1918, Dingman signed the following writing:

"Release of Child for Adoption.

"I, Leonard Dingman of Hillyard, Washington, am desirous that my female child, born September 24th, 1917, should receive the benefits and advantages of a home, where she may be educated and fitted for her duties in life, which benefits and advantages I am unable to give her by reason of the death of my wife, do hereby give, surrender, and assign said child, whose name is Isabel Ruth Dingman, unto Remi A. Gokey and Mary Emma Gokey, husband and wife, of Hillyard, Washington, and I promise not to interfere in the management of said child in any respect, or to visit or attempt to visit it without the consent of said Gokey and wife; that in consideration of the benevolence manifested by said Remi A. Gokey and Mary Emma Gokey in providing a home for my said child and adopting it as their own, I hereby relinquish all my right and claim to said minor child and to its services. I further agree not to ask or receive payment for the services or association of said child and I agree that I will not induce or attempt to induce it to leave the custody of said Gokey and wife.

"I further consent that the said Remi A. Gokey and Mary Emma Gokey, his wife, may file their petition in the superior court of the state of Washington, in and for Spokane county, for the adoption of said child as their own.

"In testimony whereof, I have hereunto set my hand and seal this 19th day of November, 1918.

"Leonard Dingman."

The signing and execution of this writing was then duly acknowledged by Dingman before a notary public as his free and voluntary act, such acknowledgment being duly evidenced by a certificate of the notary indorsed thereon, with his official seal attached. Thereafter on the same day, Gokey and wife filed in the superior court for Spokane county their duly verified petition, praying for an order of that court permitting them to adopt, and confirming the adoption by them of, the child. It was alleged in the petition that the

petitioners are husband and wife, and residents of Spokane county; that the child is fourteen months old; that its mother died on November 12, 1918; that the child is in the custody of appellant, its father; that he had given his consent to the adoption of the child by Gokey and wife, which written consent is attached to and made a part of their petition; and that they desired to adopt and make the child in law their own. A hearing was then had upon this petition. Appellant voluntarily appeared at the adoption hearing and testified as a witness therein, as did also Gokey and wife. At the conclusion of the hearing, the court made and entered its order as follows:

"This matter coming on for hearing this 19th day of November, 1918, upon the petition of Remi A. Gokey and Mary Emma Gokey, husband and wife, for the adoption of Isabel Ruth Dingman, a minor child, and consent having been made to such adoption by the surviving parent thereof, to-wit: Leonard Dingman, and Mary Emma Gokey having been examined by the court separate and apart from her said husband, and upon such examination the court being satisfied that said wife, of her own free will and accord, desires such adoption, and the court being fully advised in the premises, and satisfied of the ability of the petitioners to bring up and educate said minor child properly, and of the fitness and propriety of such adoption, having reference to the degree and condition of the parents of said child:

"It Is Now Ordered, Adjudged and Decreed, That from this date the said Isabel Ruth Dingman, to all legal intents and purposes, shall be and is the child of petitioners, Remi A. Gokey and Mary Emma Gokey, husband and wife, and that the name of said child is hereby changed from that of Isabel Ruth Dingman to Isabel Ruth Gokey."

The child was thereupon given into the custody of Gokey and wife. While the personal appearance of the appellant Dingman at the adoption hearing does not

appear from the record of the adoption proceeding, it was conclusively proven, upon the hearing of the petition to vacate the adoption order, that he had so appeared and testified in the adoption hearing. The judge who presided at the adoption hearing presided also at the hearing to vacate the adoption.

We first inquire, is the order of adoption void for want of proper setting forth of facts therein. The contention of counsel for appellant that the order is void for that reason is rested upon the provisions of Rem. Code relating to the adoption of children, reading as follows:

"Sec. 1696. *Any inhabitant of this state,* not married, or any husband and wife jointly, may petition the superior court of their proper county for leave to adopt and change the name if desired, of any child under the age of twenty-one years, but a written con- ·sent must be given to such adoption by the child, if of the age of fourteen years, . . .

"Sec. 1698. Upon the compliance with the forego- ing provisions, if the court shall be satisfied of the ability of the petitioner or petitioners to bring up and educate the child properly, having reference to the degree and condition of the child's parents, and shall be satisfied of the fitness and propriety of such adop- tion, the court shall make an order, *setting forth the facts* and declaring that from that date such child, to all legal intents and purposes, is the child of the peti- tioner or petitioners, and that the name of the child is hereby changed."

We have italicized the words of these provisions particularly relied upon by counsel for appellant. We note here that the provisions of Rem. Code, §§ 1696 and 1698, have come to us from territorial days, with but slight change in the language of § 1696, and no change in the language of § 1698. These provisions are embodied in the "probate practice act" found in the territorial code of 1881, §§ 1667 and 1669. The

act is embodied within §§ 1298 and 1680 of the code of 1881. We make these observations to show that the matter of the adoption of children was, at the time of the adoption of our state constitution, a matter of probate judicial cognizance, the materiality of which will, we think, presently appear.

It is first contended in behalf of appellant upon this branch of the case that the order of adoption is void for want of setting forth the fact that the petitioners Gokey and wife, at the time of the entering of the adoption order, were inhabitants of this state. The argument is, in substance, that because of the special nature of the proceeding, it not being one in the course of the common law, the failure to set forth such fact in the order of adoption is such a failure to show a jurisdictional fact as to render the order void on its face, notwithstanding it was made and entered in the superior court, a court of record and general jurisdiction. It is elementary that a failure to recite jurisdictional facts in a judgment rendered by a court of general jurisdiction in an ordinary action at law does not render the judgment void. This because of the jurisdictional presumptions attending the judgments of courts of that dignity. Counsel invoke in behalf of appellant the rule as announced by some of the courts, that when jurisdiction is vested by statute or other written law, in a special proceeding not in the course of the common law, in a court of general jurisdiction, as to such proceeding the court becomes in effect one of special or limited jurisdiction; that jurisdictional facts must affirmatively appear of record in the proceeding, either in the recitals of the judgment or otherwise, and that without such recital of jurisdictional facts the judgment rendered in such proceeding, even by such a court, is void. It may be conceded that there is respectable authority sustaining such view

of the law, but we think this court has committed itself
to the opposite view.   In *Taylor v. Huntington,* 34
Wash. 455, 75 Pac. 1104, there was involved the fore-
closure of a tax lien in the superior court by a special
statutory proceeding provided therefor, which it was
conceded, or at least assumed, in the consideration
of the case, that it was not a proceeding in the course of
the common law.   There was in the record in that
proceeding an absence of affirmative showing, either
in the judgment or elsewhere in the record, of facts
which were conceded to be jurisdictional, and it be-
came a question as to whether or not the judgment
rendered by the superior court therein was void for
want of such affirmative showing of jurisdictional facts
to support the judgment.   In a somewhat exhaustive
review of the authorities, Judge Dunbar, speaking for
the court, quoted with approval from § 123, Freeman on
Judgments, as follows:

"The doctrine that the judgment of the courts of
record are of any less force, or are to be subjected to
any closer scrutiny, or that they are attended with any
less liberal presumptions, when created by virtue of
a special or statutory authority, than when rendered
in the exercise of ordinary jurisdiction, has been re-
pudiated in some of the states; and the reasons sus-
taining this repudiation have been stated with such
clearness and force as to produce the conviction that
the doctrine repudiated has no foundation in principle,
however strongly it may be sustained by precedent."

And, after further reviewing the authorities, made
the following observations, which we think are con-
trolling of the branch of this case we are now consider-
ing:

"But, outside of authority, there seems to us to be no
reason which supports the distinction sought to be
maintained.   The reason why verity is imputed to the
judgment of courts that are called courts of general

jurisdiction or courts of record, as distinguished from courts of limited jurisdiction or inferior courts or tribunals, doubtless is that courts of the first class are presided over by men who are presumed to be learned in the law, aided and advised by practitioners who are also learned in the law; while courts of the other class are presided over by men of more limited learning and experience. But certainly it is the court upon which the distinction is conferred, rather than the accident of circumstances under which the same court is dealing on different occasions. The judgment of the court is equally entitled to credit whether the jurisdiction is generally or specifically conferred. Under the provisions of our constitution the superior court is constituted a court of general jurisdiction, and it remains a court of general jurisdiction in the exercise of all its judicial functions, no matter whether it is exercising its jurisdiction under the provisions of the common law, of the constitution, the probate, or any other branch of statute law. To be compelled to stop to inquire and determine whether the jurisdiction conferred upon the court was a common law power, or whether it was expressly conferred by constitutional or statutory enactment, before the validity of its judgment, or the verity to be imputed to such judgments, could be determined, would be unnecessary, inconvenient, illogical, and confusing, and not in harmony with the spirit of our code and constitution.''

We think it clearly follows that the order of adoption here in question, being a final judgment of a court of general jurisdiction, and rendered in a proceeding which we conceive to be judicial in its nature, is not void for want of recitals or setting forth facts therein, as contended by counsel for appellant; unless the words "set forth the facts," found in the above quoted language of Rem. Code, § 1698, make the setting forth of the fact that Gokey and wife were inhabitants of the state necessary to the validity of the order of adoption.

While the territorial probate court was a court of limited jurisdiction, and acquired its jurisdiction over the matter of the adoption of children solely by virtue of these provisions of the adoption statute found in the probate code, the jurisdiction of the superior court does not now rest alone upon these statutory provisions, for we read in § 6, article 4, of the constitution, that,

"*The Superior Court shall have original jurisdiction . . . of all matters of probate. . . .*"

It seems to us apparent, in view of the fact that this adoption statute was, at the time of the adoption of our state constitution, a part of the then "probate practice act," which was a single act of the territorial legislature, that the makers of the constitution used the words "all matters of probate" as inclusive of the adoption of children. It may be that the matter of the adoption of children might not ordinarily be considered a matter of probate, but it was so recognized by the law of our territory when the constitution was framed, and we think the conclusion cannot be escaped that the words "matters of probate" were used in the constitution as inclusive of that subject, as well as the probate of wills and administration of estates of decedents. The superior court being a court of general jurisdiction, created by the constitution of the state conferring upon it this among other subjects of jurisdiction, we think it was, in effect, a rendering of the words "set forth the facts," as found in § 1698, in any event as nothing more than directory, even if these words could be regarded as of greater force under the territorial law, when the subject of the adoption of children was one of jurisdiction of a court of limited jurisdiction. We are therefore of the opinion that, at this time, the failure to set forth jurisdictional facts

in the order of adoption here in question does not render such order void. This is not a case of seeking to avoid the order because the adopting parents were not in fact residents of the state at the time of the entering of the order of adoption. Whether or not the order should be set aside upon an affirmative showing, in a proper proceeding, that they were not then residents of the state, is quite another question. Indeed, in this case the evidence shows that they were residents of the state at the time the consent of appellant to the adoption was given and the order of adoption entered.

We have not overlooked our recent decision in *Platt v. Magagnini, ante* p. 39, 187 Pac. 716, and some observations made therein which seem to be out of harmony with the view of the law here expressed by us. In that case the attack was ''not a collateral, but a direct attack upon the order of adoption,'' as stated in the opinion. In other words, the attack was that, as a matter of fact, one of the adopting parents was not an inhabitant of this state at the time of the adoption, and that the adoption was otherwise obtained through fraud. The case was disposed of by this court upon those grounds found to exist as matters of fact, from the proof presented in the proceeding to set aside the adoption, upon the trial of issues of fact raised therein. The observations made in that opinion that recitals of jurisdictional facts in the order of adoption were necessary to its validity, were made without having our attention called to the decision in *Taylor v. Huntington,* above quoted from. While the attack upon the order of adoption in the case before us is a direct attack, in so far as it seeks to set aside the order of adoption upon the ground of want of consent on the part of Dingman to the adoption, and the obtaining of his consent by undue influence at a time

when he was not mentally competent to give his consent, which we will presently notice, the attack upon the ground that the order of adoption is void upon its face for want of setting forth of facts therein must, of course, be decided from the face of the order itself, just as if this were wholly a collateral attack upon the order. The observations made in the *Magagnini* opinion by way of argument, which seem inconsistent with our views herein expressed, we still think are sound in so far as they touch the question of fraud inhering in the judgment, in view of the fact that an adoption proceeding is not an adversary proceeding. But in so far as that opinion contains observations indicating a view on the part of the court that jurisdictional facts must be stated in the order of adoption to prevent it being void upon its face, we think that they were inadvertently erroneously made, that a critical reading of the whole opinion in that case will render it plain that we did not regard this question as a decisive one in the disposition of that case, other than as touching the question of fraud inhering in the judgment, and that therefore we should not now regard those observations as controlling upon the question we are now considering.

It is further contended that the above quoted paper, purporting to be a consent of appellant to the adoption of his child by Gokey and wife, is not, in fact, a consent. The argument seems to be rested upon the words "I further consent that the said Remi A. Gokey and Mary Emma Gokey, his wife, may file their petition in the superior court of the state of Washington in and for Spokane county, for the adoption of said child as their own," and that these words do not constitute a consent to the adoption. We find, however, in the body of the writing, these words: "I . . . do hereby give, surrender and assign said child . . .

unto Remi A. Gokey and Mary Emma Gokey,'' and
''I hereby relinquish all my right and claim to said
minor and to its services.'' When this quoted lan-
guage is read in the light of the fact that appellant
voluntarily appeared at the adoption proceedings and
testified therein, we think there is little or no room
left for arguing that his consent to the adoption was
not given in the manner required by statute. Of course,
we are treating this particular question as one of fact,
and apart from the question of jurisdiction for want
of proper recitals in the order, as discussed above.

The contention that the order of adoption should
now, in any event, be set aside upon the ground that
appellant's consent to the adoption was obtained by
undue influence, and at a time when he was not mentally
competent to give such legal consent, is strenuously
made and pressed upon us with a marked degree of
ability on the part of counsel. This contention, how-
ever, involves only questions of fact as to which the
evidence is in considerable conflict. We have read
every word of the evidence as abstracted by appellant's
own counsel, and have become convinced therefrom
that, even putting aside the question of the advantage
of the trial judge in seeing and hearing the witnesses,
and viewing the evidence in cold typewriting, we would
be much inclined to arrive at the same conclusion to
which the trial court did; and when we take into con-
sideration the additional fact that the evidence in sup-
port of the contention made in behalf of appellant was
all oral, giving the trial judge an opportunity to hear
and see all the witnesses upon whose testimony his con-
clusions were based, the fact that the same judge who
heard this petition seeking to set aside the order of
adoption presided at the hearing in the adoption pro-
ceeding, and the fact that appellant was present and
testified at such hearing, we are more than convinced

that we would be wholly unwarranted in disturbing the order and judgment denying the setting aside of the order of adoption. It would be quite unprofitable for us to review in detail the evidence in this opinion.

The order and judgment appealed from is affirmed.

HOLCOMB, C. J., MAIN, and MACKINTOSH, JJ., concur.