[No. 30322. *En Banc.* February 2, 1948.]
*In the Matter of the Adoption of a Minor.*[1]

*Morris A. Robbins* and *Meier & Murray*, for appellants.

MILLARD, J.—A husband and wife.who were married prior to July 13, 1942, are the natural mother and father of a legitimate child born April 2, 1943. The husband enlisted in this state July 13, 1942, in the armed forces of the United States. He visited his wife at her home in this state in November, 1943, returning to his station November 23, 1943. He was transferred December 10, 1943, to a port in eastern United

[1] Reported in 189 P. (2d) 458.

States for shipment overseas, from which port he departed March 1, 1944, to the European theater of operations, where he was continuously until October 4, 1945, when he returned to the United States.

On August 3, 1945, the wife gave birth to a child whose father is not the mother's husband, as the wife had no contact with or access to her husband from November 20, 1943, to the date of the child's birth, a period of 621 days. While the normal period of gestation of 260 to 265 days may be exceeded, the extreme limit of a period of gestation is 334 days.

The mother, apprehensive as to the consequences which would ensue when her husband returned to his home and discovered the situation, offered the child to a married couple for adoption. Petition, accompanied with consent of the mother, was filed August 7, 1945, to adopt the child. Investigation made under supervision of the court established qualifications of petitioners. The husband of the mother of the child has never been informed of the birth of the child nor has he been given notice of petition for adoption.

Petitioners' offer of proof by the mother of the child that the child's father is the mother's brother-in-law, the circumstances under which the child was conceived, that her husband had no knowledge of the birth of the child or of the adoption proceedings, and dire consequences which would result when he had such knowledge, was refused on the ground that everything contained in the offer was irrelevant and inadmissible.

On the ground that, as neither the consent to the adoption had been filed by the husband of the mother of the child, nor had he been notified of the adoption hearing, decree was entered dismissing the petition. Petitioners appealed.

■ While there is a strong presumption that a child born during wedlock is legitimate, that presumption is rebuttable. A married woman may give birth to an illegitimate child. The presumption of that child's legitimacy is not conclusive. *State v. Coliton*, 73 N. D. 582, 17 N. W. (2d) 546; 156 A. L. R. 1403; 10 C. J. S. 7.

"Many cases are cited which properly hold there is a presumption of legitimacy, and that, in the interest of public policy, a woman should not be permitted to testify that some man other than her husband is the father of her child, born in wedlock. . . . Under all the authorities the presumption of legitimacy may be overcome by proof. Proof that it is impossible the husband of its mother could be the child's father, is admissible, and being admitted, establishes illegitimacy. . . . When all the ends which the presumption of legitimacy is designed to conserve have been defeated by sordid facts, the courts must deal with the situation in a common-sense way. The statute grants to an illegitimate child inheritance from its father. Its mother knows who the father was. Her evidence is the best evidence, and justice to the child requires that she be a competent witness to its paternity." *Nolting v. Holt,* 113 Kan. 495, 215 Pac. 281, 31 A. L. R. 1117.

See, also, *In re Jones,* 110 Vt. 438, 8 A. (2d) 631, 128 A. L. R. 704.

Every child born in wedlock is presumed to be legitimate. *Pierson v. Pierson,* 124 Wash. 319, 214 Pac. 159; *State ex rel. Bentley v. Frenger,* 158 Wash. 683, 291 Pac. 1089; annotations 128 A. L. R. 713. The presumption that every child born in wedlock is legitimate is rebuttable. *Pierson v. Pierson, supra; In re Jones, supra;* 7 Am. Jur. 657.

In *Serway v. Galentine,* 75 Cal. App. (2d) 86, 170 P. (2d) 32, it was held that evidence of a period of nonaccess of three hundred eighty days prior to the birth was sufficient to overcome the presumption that a child born in wedlock is legitimate. In *State ex rel. Hardesty v. Sparks,* 190 S. W. (2d) (Tenn.), 302, it was held that the presumption may be overridden by clear, strong, and convincing evidence that no cohabitation between husband and wife existed during the period when the child must in course of nature have been begotten. See, also, *State ex rel. Walker v. Clark,* 144 Ohio St. 305, 58 N. E. (2d) 773.

In *Altomare v. Altomare,* 63 N. Y. S. (2d) 71, the husband was in the United States army. He departed from the United States for the European theater of operations March 13, 1944, and remained there until October 6, 1945. In holding

a child born June 19, 1945, to the soldier's wife was illegitimate, the court said:

"Applying human experience, common sense and reason as required by the rules thus laid down, it must be held here the evidence requires the finding that plaintiff is not the father of the child in question of the defendant."

The evidence is clear that the husband in the case at bar did not have access to his wife for a period of more than six hundred days prior to birth of the child, which is in excess of any possible period of gestation; hence, the child is illegitimate.

Error is next assigned on court's rejection of offer of proof by the mother that her husband is not the father of the child whom appellants seek to adopt.

The fact of the child's illegitimacy was established by other evidence, hence the mother's testimony was not necessary for determination of the question of illegitimacy. For guidance, however, in future similar cases, we announce the rule that the mother was competent to testify to the illegitimacy of the child in question, which was born to the mother during wedlock.

The "Lord Mansfield rule," (*Goodright v. Moss*, 2 Cowp. 591, 98 Eng. Reprint 1257, decided May 1, 1777) that a parent is not competent to testify to the nonaccess of his spouse, where the effect of such testimony would be to bastardize a child born during coverture, was followed by some of the earlier decisions but has long since been rejected by the courts.

Our statute (Rem. Rev. Stat., § 1210 [P.P.C. § 38-1]) provides that

"Every person of sound mind and suitable age and discretion, except as hereinafter provided, may be a witness in any action or proceeding."

We are not here concerned with the exceptions in question which relate to the so-called "dead man" statute and the testimony of those in confidential relationships. They do not forbid testimony by one spouse of nonaccess to the other.

The supreme court of Minnesota held in *State v. Soyka*,

181 Minn. 533, 233 N. W. 300, that a statute like Rem. Rev. Stat., § 1210, *supra,* abrogated the "Lord Mansfield rule" if that rule was a part of the common law of England adopted by this country. The court said:

"We may assume that we took over that rule with our adoption of the common law of England. If that be so, the rule has been changed by statute. 'Any woman who is delivered of an illegitimate child, or pregnant with a child which, if born alive, might be illegitimate' may institute the statutory filiation proceeding (G.S. 1923 [1 Mason, 1927] § 3261). Such a proceeding is within G.S. 1923 (2 Mason, 1927) § 9814, making competent to testify in 'any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence,' every person of sufficient understanding, including the parties. Married persons necessarily are included. That would be clear even if the statute omitted its express provision that neither spouse can be examined for or against the other without the latter's consent during the marriage or afterwards. The exclusion from that exception of civil or criminal proceedings by one spouse against the other, criminal actions or proceedings for crimes committed by one against the other, and an action or proceeding for abandonment and neglect of the wife or child by the husband makes the legislative intent clearer still. The legislature gave special attention to the question of the competency as witnesses of married persons, and there is no possibility of concluding that it was not the intention to abrogate, among other things, the common law rule rendering parents incompetent to testify to the illegitimacy of a child born to the mother during wedlock.

"Dean Wigmore has made a very destructive analysis of the 'dogmatic' pronouncements of the English rule. He refers to the decencies and moralities invoked in its support as 'mere pharisaical afterthoughts, invented to explain an otherwise incomprehensible rule, and having no support in the established facts and policies of our law. There never was any true precedent for the rule,' he continues, 'and there is just as little reason of policy to maintain it.' 4 Wigmore, Ev. (2 ed.) §§ 2063, 2064. The statute above referred to is enough to show that long ago our legislature declared that it should not be maintained in this state."

The "Lord Mansfield rule" was rejected in *Moore v. Smith,* 178 Miss. 383, 172 So. 317, and in *Lynch v. Rosenberger,* 121 Kan. 601, 249 Pac. 682, 60 A. L. R. 376, as artificial

and unsound. See, also, *In re Wray's Estate,* 93 Mont. 525, 19 P. (2d) 1051; *Loudon v. Loudon,* 114 N. J. Eq. 242, 168 Atl. 840, 89 A. L. R. 904; 7 Wigmore on Evidence (3d ed.) 368, § 2064.

Counsel for appellants argue that, as there was no right of adoption at the common law *(Wall v. Estate of McEnnery,* 105 Wash. 445, 178 Pac. 631), the procedure set up by the statute (Rem. Supp. 1943, § 1699-4 [P.P.C. § 354f-7]), which creates the right of adoption, must be strictly followed to effect the adoption of a child; and, as there is no requirement of law therefor, it is not necessary that notice of an adoption hearing be given to the husband of a woman who has borne the illegitimate child by another man, or that her husband, who is not the father of the child, must consent to the adoption. *In re Blake,* 21 Wn. (2d) 547, 151 P. (2d) 825.

The adoption statute (Rem. Supp. 1943, § 1699-4) provides that written consent to adoption must be filed prior to a hearing on petition therefor by each of the child's living parents if the person to be adopted be of legitimate birth or be legitimatized thereafter, and is a minor, but, if the person to be adopted be illegitimate and a minor, "then by his mother, if living . . ."

While the father of an illegitimate child which has not been legitimatized is not entitled to notice of hearing on a petition for its adoption, and he may not challenge the validity of the order of adoption since no right of his is adversely affected thereby *(In re Blake, supra),* it does not follow, nor do we find any authorities so holding, that a husband is not entitled to notice of hearing on petition for adoption of a child which is presumptively his child. It is incumbent upon the mother, who alleges her husband is not the father of the child, to prove by clear and convincing evidence that the child is illegitimate. The husband is entitled to an opportunity to refute the wife's evidence that she did not have contact with him during the period of gestation. The husband is entitled to his day in court. It is unthinkable that the legislature intended that, in a case such as the one

at bar, a child should be adopted unless it was with the consent of the natural mother and her husband who, presumptively, is the natural father of the child.

While the adoption statute does not provide for notice to the woman's husband in such a case, the statute provides for proceedings in the superior court, and it must be, of course, presumed that the legislature intended that the adoption proceedings would be in accordance with the usual practice of the superior courts. We cannot believe that the legislature intended that a child should be adopted, as is sought to be done in the case at bar, unless it was with the consent of the child's mother and the mother's husband. This could not be legally adjudged unless the mother *and her husband,* who is presumptively the father of the child, have notice of the proceedings and are afforded an opportunity to appear therein.

The following language in opinion in *Moore v. Smith,* 178 Miss. 383, 172 So. 317, while applied to a different situation, is just as apt in the case at bar, if we did not require notice of the adoption hearing served on the husband of the mother of the child involved herein:

"To hold otherwise would protect an unfaithful wife, and also her paramour, both of whom had grossly violated the matrimonial relation."

Why should the wife's infidelity be hidden from the husband, and he caused to remain tied to an unfaithful wife (whom he could never again trust) until the sordid facts are, as they will be in the future, brought to his attention? A pure public policy may not be preserved by temporary or permanent concealment of felony of the wife and her paramour.

The order is affirmed.

BEALS, STEINERT, and SIMPSON, JJ., concur.

JEFFERS, J., concurs in the result.

HILL, J. (concurring in the result)—Just what hearings are contemplated prior to the entry of a decree of adoption in a proceeding under "The Washington State Adoption

Act," chapter 268, p. 828, Laws of 1943 (Rem. Supp. 1943, §§ 1699-1 to 1699-17 [P.P.C. §§ 354f-1 to 354f-33], inclusive), is not too clear.

As I read the statute, it is possible to have an adoption without any hearing whatsoever, provided there is no question concerning consent and the report based upon the investigation required by Rem. Supp. 1943, § 1699-10, is favorable. A hearing on the petition for adoption need be had only if the report of the investigation is adverse and a hearing is requested by the adopter. Rem. Supp. 1943, § 1699-11.

Rem. Supp. 1945, § 1699-12, provides that

"Upon the conclusion of such hearing, *if had,* or upon filing the report of investigation, if any, . . . the Court shall enter its decree either granting or denying the petition for adoption . . ." (Italics ours.)

Working back from the decree of adoption, there seems to be a possibility of three hearings:

(a) A hearing upon the petition for adoption, if the report of the investigation be adverse. Rem. Supp. 1943, § 1699-11. (We are not here concerned with such a hearing, as the report of the investigation was not adverse.)

(b) A hearing to determine whether or not any of the conditions set forth in Rem. Supp. 1943, § 1699-5, exist, and whether a decree that the consent of a parent shall not be required should be entered. Rem. Supp. 1943, § 1699-6. (We are not concerned here with such a hearing because, if the husband of the mother in this proceeding is a *parent* of the child to be adopted, he does not come within any of the conditions that would deprive him of notice; if he is not a *parent,* these two sections of the statute have no application to the present case.)

(c) A hearing to determine whether or not the child to be adopted is legitimate. There is no express provision for such a hearing, but I direct attention to Rem. Supp. 1943, § 1699-9, which reads:

"The Court shall direct notice of any hearing hereunder to be given to any non-consenting parent or guardian, if any,

or any person or association having the care, custody or control of said child. . . . *And provided further,* That if the Court is satisfied of the illegitimacy of the child to be adopted, and so finds, then no notice to the father of such child shall be required. . . ."

It seems obvious that the question of legitimacy must be determined prior to any hearing referred to in Rem. Supp. 1943, § 1699-9, else how can the court determine that no notice to the father of the child need be given?

It would seem that the court might satisfy itself that a child is illegitimate and make its findings to that effect based on the "complete investigation" required by Rem. Supp. 1943, § 1699-10. However, I see no reason why there should not be a hearing on that question such as was had in this case; but, as I have pointed out, such a hearing is not provided for by the adoption statute and must of necessity precede any hearings referred to in Rem. Supp. 1943, § 1699-9.

I find no statute or rule of law that requires that the husband of the mother of the child to be adopted be contacted in the "complete investigation" required by the statute, or that he be notified of any hearing on the issue of legitimacy, if the trial court can be satisfied of the illegitimacy of the child without such contact or notice. But if the trial court is not satisfied without such contact being made or such notice being given, then I am of the opinion that the petitioners for adoption cannot circumscribe the inquiry by insisting that the trial judge must be satisfied of the fact of illegitimacy and must make a finding thereof without either contacting the husband of the mother of the child or giving him notice of the hearing on the issue of legitimacy.

If the trial court were satisfied of the illegitimacy of the child, either as the result of a "complete investigation" or of a hearing, and made a finding to that effect, then the position of the petitioners that no consent of the husband of the mother was necessary, and that he was not entitled to notice of any subsequent hearing in the adoption proceedings, would be sound. The majority, however, takes the position that the husband of the mother must be noti-

768

fied of the hearing on the issue of legitimacy. I find no persuasive authority for the majority's holding, where the trial court is satisfied of the illegitimacy of the child and is willing to make a finding to that effect without the giving of such notice. The purpose of the notice is not to notify the husband of the infidelity of his wife, but to give the presumptive father an opportunity to uphold the legitimacy of the child.

The husband of the mother is certainly a material witness on the question of access or nonaccess. A trial court may well refuse to be satisfied of the illegitimacy of a child born in wedlock, no matter what testimony may be adduced in an *ex parte* hearing, until all the material witnesses have been given an opportunity to be heard. The appellants insist that, from the evidence, it was impossible to arrive at any conclusion except that the child was illegitimate. They place great reliance on army records which show that the husband of the mother of the child had been "beyond the seas" for 521 days preceding the birth of the child. One frequently heard, during the war and since, of men who, while enjoying a few days' leave, hitchhiked rides on bombers from various parts of Europe and the South Pacific to their homes in the United States and returned the same way, thus having a precious day or two at home without the army's knowledge. Such occurrences probably were rare, but they did happen; and the army record was, in my opinion, not necessarily so conclusive that the court *must* be "satisfied" therefrom that the child was illegitimate.

There is another phase of this matter concerning which I desire to make my position clear. I agreed that this appeal might be presented here under an anonymous title for the protection of the child involved, not as a mantle to protect the mother and the putative father from whatever may be the consequences of their joint and several infidelities.

The nominal appellants are the petitioners for the adoption of the child. Except as to the matter of a possible delay in locating the husband of the mother of the child,

which certainly would not have been as great as the time consumed in this appeal, I cannot see that the petitioners have any legitimate concern as to whether or not the husband was notified of the hearing on the question of legitimacy. I have the very definite impression that the actual appellant in this case is the mother of the child, who desires to conceal her infidelity and its consequences from her husband. So far as I am concerned, any protection she receives must be incidental and not intentional. What should be told to whom, is a matter which the interested parties in a situation such as that presented here may determine in the court of their own consciences. They do not compound a felony, as suggested by the trial court, if their concealment of adultery is not for compensation, gratuity, or reward, or any promise thereof. The petitioners for the adoption of this child could, if they so desire and the mother consents, raise and treat the child as their own without a formal adoption; but, when the aid of the law is invoked in adoption proceedings, the parties cannot insist, as appellants do here, on the collaboration of the court in the concealment of faithless and felonious conduct.

To summarize:

Illegitimacy is a fact that must frequently be determined in adoption proceedings, but the adoption statute provides no *modus operandi*. The requirement is that the court be "satisfied" of the illegitimacy of the child to be adopted.

The majority holds that the court can never be "satisfied" without in some way notifying the husband of the mother of the child. The majority may well be right, but I am not persuaded that that is the law or the intent of the legislature.

The court may very properly refuse to be "satisfied" unless all the available material witnesses are heard, and I therefore concur in the result; but if the trial court were "satisfied" of the illegitimacy of a child without hearing from the husband of the mother, I do not believe there is any requirement, statutory or otherwise, that he must be notified.

MALLERY, C. J., and ROBINSON, J., concur with HILL, J.

SCHWELLENBACH, J. (dissenting)—The majority states:

"The evidence is clear that the husband in the case at bar did not have access to his wife for a period of more than six hundred days prior to birth of the child, which is in excess of any possible period of gestation, hence the child is illegitimate."

The illegitimacy of the child having been clearly established, we must now look to the adoption statutes for our guidance. Rem. Supp. 1943, § 1699-4, provides:

"Written consent to such adoption must be filed prior to a hearing on such petition, as follows: . . .

"(b) If the person to be adopted be of legitimate birth or legitimized thereafter, and a minor, then by each of his living parents, except as hereinafter provided;

"(c) If the person to be adopted be illegitimate and a minor, then by his mother, if living, except as hereinafter provided; . . ."

Rem. Supp. 1943, § 1699-9, provides:

"The Court shall direct notice of any hearing hereunder to be given to any nonconsenting *parent* or guardian, if any, or any person or association having the care, custody or control of said child. . . . *And provided further,* That if the Court is satisfied of the illegitimacy of the child to be adopted, and so finds, then no notice to the *father* of such child shall be required. . . ." (Italics mine.)

There is no provision in the adoption statutes for notice to the husband of the mother of an illegitimate child. If there is any question as to the illegitimacy of the child of a married woman, then the court could, and should, require notice to be given to the husband. This would not be for the protection of the husband, but for the protection of the child, to save him from the stigma of being declared illegitimate. Here there was no necessity for such an act of caution on the part of the trial court. The presumption of legitimacy during coverture was entirely overcome. There is no doubt whatsoever but that the husband is not the father of the child.

The reason which influenced the trial court's action is clearly shown by his remarks at the close of the testimony.

"Now, certainly, isn't that man entitled to notice, when he is overseas, soldier in the armies of the United States? Isn't he entitled to know that his wife is guilty—has been guilty of infidelity, adultery, if you please, that the mother of this child has done that to him. Now, he's entitled to institute divorce proceedings and, indeed, even take his own child away from her. No, I don't believe it is the policy of the law that lawyers or judges or anybody else should compound felonies."

The majority was drawn into the same error when, after holding that the child was illegitimate, it concluded:

"Why should the wife's infidelity be hidden from the husband and he caused to remain tied to an unfaithful wife (whom he could never again trust) until the sordid facts are, as they will be in the future, brought to his attention? A pure public policy may not be preserved by temporary or permanent concealment of felony of the wife and her paramour."

I agree that, as a matter of pure public policy, a husband is entitled to know of his wife's unfaithfulness, *but not in or through an adoption proceeding.* This proceeding is solely and entirely for the benefit of the child, in order that he may be adopted by proper foster parents and be given an opportunity to start life on an equal footing with other more fortunate children. At no place in the adoption statute can be found any provision for notice of any kind to the husband of the mother of an illegitimate child.

*In re Hickman,* 170 S. W. (2d) (Mo.) 695, was an action for the adoption of an illegitimate child, consent for such adoption having been given by the mother. The Missouri statutes covering adoption are similar to ours. The trial judge denied the petition on the ground that the husband of the child's mother had not been notified. In reversing that ruling, the court said:

"Section 9609 requires the consent of the parents or surviving parent and guardian, if any, of the child. In substance it requires the consent of the legal custodian of the child. Section 9611 requires that notice must be given to the party or parties whose consent is required. Since in this case the evidence shows that the child, though born

in lawful wedlock, is illegitimate, it follows that notice to the husband is not required. [Citing cases.]

"Under the facts before us here, it is apparent that the welfare of the child, which is a matter of chief concern in a case such as this, will be best subserved by permitting her adoption by the petitioners."

The order should be reversed.