[No. 4693–II.  Division Two.  January 30, 1981.]

*In the Matter of the Application for a Writ of Habeas Corpus of* RICHARD J. SANTORE, ET AL.

---

*Craig L. Powers,* for appellants.

*John L. Messina* and *Bobbee Musgrave,* for respondent.

*Martha Eller,* for guardian ad litem.

REED, C.J.—Richard and Karen Santore appeal from an order dismissing their petition for a writ of habeas corpus, which they filed to regain custody of Mrs. Santore's infant son from an adopting couple. We affirm.

In November of 1978, Karen Santore moved from Massachusetts to Pierce County, Washington, immediately filing a petition for dissolution of her marriage to Richard Santore. In late January or early February of 1979, Mrs. Santore became pregnant by Michael Murphy, who died suddenly in mid–February without knowing of the pregnancy. In March, a nun referred Mrs. Santore to a Tacoma obstetrician, Dr. Peter Kesling. Mrs. Santore mentioned adoption to Kesling at her first appointment with him. During this initial consultation, Mrs. Santore told Kesling she did not want her husband to know about the pregnancy because she feared losing custody of her children in the pending dissolution action. She also mentioned that the dissolution trial was scheduled at about the date of her expected delivery. Kesling suggested she consult with her attorney.

Seeking information on adoption, Mrs. Santore contacted several individuals and agencies, including Catholic Community Services, which informed her she would have to obtain her husband's consent to the adoption. In July, Mrs. Santore told Kesling of her distress over Catholic Community Services' spousal consent requirement. Kesling then referred her to Tacoma attorney James Mason to investigate the possibility of a private adoption. Mason prepared a consent to adoption for her signature and, in an effort to avoid the requirement of her husband's consent, a paternity affidavit. Mason and his secretary reviewed the consent form and adoption procedures with Mrs. Santore and gave her a copy of the consent form to keep, explaining that she would be offered an identical copy to sign after the baby was born. At the request of Mrs. Santore, Mason contacted the attorney handling her dissolution to postpone the trial date.

In late September 1979, Mrs. Santore informed Mason her husband had discovered she was pregnant. She told Mason her husband would sign whatever documents were necessary to complete the adoption. Mason mailed a consent form to Mr. Santore, but Mr. Santore refused to sign the form because it did not state clearly enough that he was not the natural father. Although Mason subsequently mailed an amended consent clarifying the point, Mr. Santore never signed either consent.

On October 22, 1979, Mrs. Santore gave birth to a baby boy. Two days later, she signed the consent to adoption and a relinquishment form authorizing the hospital to release the child to Mason for a pending adoption. The same afternoon, Mason presented the consent to adoption, a petition for adoption, an order appointing next friend, and the paternity affidavit to a Pierce County court commissioner. Mason previously had filed an unverified preplacement report by the court-appointed next friend. After reviewing these documents, the commissioner signed an order relinquishing the child to the adopting parents.

On November 15, 1979, Mrs. Santore signed a revocation of consent to adoption. Four days later, the Santores filed the revocation and a petition for a writ of habeas corpus. On March 21, 1980, the adopting husband filed a sworn statement that he had caused to be filed all reports known to him of preplacement studies on him and his wife. Thereafter, the trial court consolidated the petition for writ of habeas corpus with the petition for adoption. *See Rizo v. Burruel,* 23 Ariz. 137, 202 P. 234 (1921). On April 8, 1980, following a 4–day trial, the court dismissed the habeas corpus petition. The Santores appealed.[1]

First, the Santores have indiscriminately assigned error to each of the trial court's 48 findings of fact, contending they are unsupported by substantial evidence. We decline to examine the evidence supporting the findings, however, because the Santores have failed to comply with RAP 10.3(g), which requires a separate assignment of error for each finding of fact a party contends was improperly made, together with a reference by number to each contested finding. Consequently, the trial court's findings of fact become the established facts of the case, and our function is limited to determining whether the findings of fact support the trial court's conclusions of law and judgment. *In re Bennett,* 24 Wn. App. 398, 400–01, 600 P.2d 1308 (1979).

Next, the Santores challenge the constitutionality of RCW 26.32.916,[2] upon which the trial court relied to dismiss their habeas corpus petition. The purpose of this statute was to cure the unintentional repeal in Laws of 1979, 1st Ex. Sess., ch. 165 (effective September 1, 1979) of all

---

[1]The court declined to grant the petition for adoption at the time it dismissed the habeas corpus petition, although it indicated it would grant the adoption petition if its dismissal of the habeas corpus petition were upheld on appeal. We believe that the parties are barred under the doctrines of res judicata and collateral estoppel from relitigating any issues that were raised or should have been raised in this appeal. *Henderson v. Bardahl Int'l Corp.,* 72 Wn.2d 109, 431 P.2d 961 (1967).

[2]RCW 26.32.916 provides:

provisions in RCW 26.32 permitting adoption by written consent of the natural parents. Substitute House Bill 1729, 46th Legislature (1980) (House Judiciary Committee). The Santores argue (1) the statute retroactively interferes with their "vested rights," in violation of the due process and contract clauses of the federal and state constitutions, by making effective Mrs. Santore's consent to adoption, which was ineffective under the law existing when the consent was executed; and (2) the statute violates due process by conferring arbitrary discretion on trial courts.

As to the first of these arguments, we note that a retroactive statute is unconstitutional under the due process or contract clauses only if the statute is unfair or unreasonable. 2 C. Sands, *Statutes and Statutory Construction* § 41.05 (4th ed. 1973); Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 694–95 (1960). *See Ketcham v. King County Medical Serv. Corp.*, 81 Wn.2d 565, 570, 502 P.2d 1197 (1972) (impairment of contract). The proper test of the constitutionality of retroactive legislation is whether a party has changed position in reliance upon the previous law or whether the retroactive law defeats the reasonable expectations of the parties, not whether the law abrogates a "vested right," which is merely a conclusory label. 2 C. Sands, *supra* at § 41.05; Hochman, *supra* at 696. Curative laws, such as RCW 26.32.916, which implement the original intentions of affected parties are constitutional because there is no injustice in retroactively depriving a person of a right that was created contrary to his expectations at the time he entered into the transaction from which the right

---

"An action or proceeding for adoption commenced after September 1, 1979, and not later than ninety days after March 7, 1980, which complies with the jurisdictional and procedural requirements of chapter 26.32 RCW as it existed prior to September 1, 1979, shall not be invalid because of a failure to comply with the requirements of chapter 165, Laws of 1979 ex. sess. However, the court in its discretion need not apply this section upon the pleading of a person who alleges, within ninety days after March 7, 1980, that this section prejudices him or her in the exercise of any right."

arose. *McNair v. Knott,* 302 U.S. 369, 372–73, 82 L. Ed. 307, 58 S. Ct. 245 (1937); *Goddard v. Frazier,* 156 F.2d 938, 942–43 (10th Cir.), *cert. denied,* 329 U.S. 765, 91 L. Ed. 659, 67 S. Ct. 124 (1946); 2 C. Sands, *supra* at § 41.12; Hochman, *supra* at 720–21. *See In re Adoption of Morrison,* 267 Wis. 625, 66 N.W.2d 732 (1954). Application of RCW 26.32.916 defeats no justifiable reliance interests of the Santores. Mrs. Santore intended to relinquish her child when she signed the consent and did not sign in reliance upon the then defective provisions of RCW 26.32 created by the 1979 amendments. Indeed, the record indicates that the Santores were unaware of the 1979 amendments until after they filed the habeas corpus petition.

We need not address the Santores' argument attacking the clause in RCW 26.32.916 conferring discretion on the court[3] because even if we were to hold the clause invalid, the remainder of RCW 26.32.916 would be severable and unaffected. Laws of 1980, ch. 86, § 5; *O'Connell v. Conte,* 76 Wn.2d 280, 287, 456 P.2d 317 (1969); *Boeing Co. v. State,* 74 Wn.2d 82, 88, 442 P.2d 970 (1968). In any event, holding the clause invalid would not affect the outcome of the case because the trial court did not base its opinion on this provision of the statute.

Because we conclude that RCW 26.32.916 is not unconstitutional and therefore governs this case, we must next determine whether the relinquishment proceeding complied with the provisions of RCW 26.32 as it existed prior to September 1, 1979. The Santores contend that the proceeding was fatally deficient in failing to satisfy two statutory requirements: (1) the preplacement report presented to the commissioner at the relinquishment hearing was not

---

[3] We note, however, that the clear purpose of the clause is to avoid prejudice to parties who had somehow justifiably relied on the previous law, thereby avoiding possible constitutional objections to the retroactive nature of the statute. As explained above, the Santores did not rely on the defective provisions of RCW 26.32 created by the 1979 amendments. Consequently, the trial court properly concluded that they were not prejudiced by RCW 26.32.916.

verified;[4] and (2) no sworn statement that the petitioner had filed all preplacement reports known to him was filed *prior* to the relinquishment hearing.[5] Although both statutory provisions are couched in mandatory language, the trial court concluded that they are merely directory and that noncompliance did not render invalid the relinquishment order entered in this case.

Although adoption statutes, being in derogation of the common law, should be strictly construed, *In re Adoption of Hickey,* 18 Wn. App. 259, 567 P.2d 260 (1977), they should not be given a construction so narrow and technical as to defeat their manifest intent and beneficial aims. *In re McFarland,* 223 Mo. App. 826, 830, 12 S.W.2d 523, 525 (1928); *Gebhardt v. Warren,* 399 Ill. 196, 203–04, 77 N.E.2d

---

[4]RCW 26.32.220 provides:

"Preplacement report—Contents. (1) The preplacement report shall consist of a written report to the court setting forth all relevant information relating to the fitness of the petitioner as a prospective adoptive parent. The preplacement report shall be based upon a study which shall include an investigation of the home environment, family life, health, facilities, and resources of petitioner. The preplacement report shall provide the court with such other information as may be relevant to the placement of a child in the petitioner's home. The preplacement report shall include a list of the sources of information upon which the report is based. The preplacement report shall include a recommendation to the court as to the fitness of the petitioner as a prospective adoptive parent and as to whether it would be in the best interest of a child to be placed in the home of the petitioner. The recommendation shall be advisory to the court. *The preplacement report shall be dated and verified.*

"(2) A single preplacement report may be filed for a husband and wife who join as petitioners in an adoption proceeding." (Italics ours.)

[5]"(2) No order of relinquishment as to a minor whom petitioner seeks to adopt shall be granted unless:

"(a) A preplacement report and petitioner's sworn statement that he has caused to be filed all reports known to him on preplacement studies made of petitioner are on file with the court *prior to the hearing on the order of relinquishment;* or

"(b) The order of relinquishment provides that the minor is to be relinquished to the custody of an agency." (Italics ours.) Laws of 1971, 1st Ex. Sess., ch. 172, § 3. (Former RCW 26.32.210(2), amended by Laws of 1979, 1st Ex. Sess., ch. 165, § 17).

187, 191 (1948). One important objective of the relinquishment and adoption statutes is to protect the adopting parents, the child, and the new family relationship from subsequent disturbance by the natural parents. *In re Adoption of Reinius,* 55 Wn.2d 117, 346 P.2d 672 (1959); *In re Adoption of Baby Girl K,* 26 Wn. App. 897, 615 P.2d 1310 (1980). This desirable objective suggests that courts should be reluctant to invalidate adoption proceedings on technical grounds. H. Clark, *Domestic Relations* 615 (1968).

With this in mind we conclude there need not be strict compliance with each and every provision of the adoption statutes, even though such provisions may be couched in mandatory language. With at least some of these provisions—we make no attempt here to construct an exclusive listing—substantial compliance is sufficient. Numbered among these are the requirements for verification of the preplacement report and the filing of the sworn statement.

■ Substantial compliance has been defined as actual compliance in respect to the substance essential to every reasonable objective of the statute. *Stasher v. Harger-Haldeman,* 58 Cal. 2d 23, 29, 372 P.2d 649, 22 Cal. Rptr. 657, 660 (1974). It means a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted. *In re Estate of Rudd,* 140 Mont. 170, 177, 369 P.2d 526, 530 (1962). What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. *Trussell v. Fish,* 202 Ark. 956, 961–62, 154 S.W.2d 587, 590 (1941).

■■ We believe that RCW 26.32.220 (governing preparation of a preplacement report) was substantially complied with in this case. The purpose for requiring verification of the preplacement report—to assure the court of the truthfulness of the information contained therein—was fully satisfied by the county investigator's subsequent testimony under oath at the consolidated hearing. *Cf. State*

*v. Hurd,* 5 Wn.2d 308, 318, 105 P.2d 59 (1940). The Santores have never questioned the accuracy of the preplacement report; thus the lack of verification resulted in no harm. Omissions or failures by public officials should not prejudice the interests of those, such as the adopting parents in this case, who have no direct and immediate control over such officials. 2A C. Sands, *supra* § 57.15; 73 Am. Jur. 2d *Statutes* § 25 (1974); 67 C.J.S. *Officers* § 200 (1978).

We also believe there was substantial compliance with former RCW 26.32.210(2)[6] (governing the granting of a relinquishment order). The obvious purpose for requiring the adopting parents to file their sworn statement with the court is to guarantee that another preplacement report, perhaps containing unfavorable information or recommendations, is not hidden from the court.[7] In the instant case, the sworn statement was filed prior to the consolidated hearing and the Santores presented no evidence of the existence of other preplacement reports on the petitioning parents. If an act is performed, but not in the time or in the precise manner directed by statute, the statutory provisions should not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized. 1A C. Sands, *supra* § 25.03. In *Whitney v. Knowlton,* 33 Wash. 319, 72 P. 469 (1903), the trial court denied a motion to set aside a default judgment against a nonresident defendant, although the plaintiff had failed to file a required affidavit of nonresidence in a timely manner. The Supreme Court affirmed, stating:

> In matters of formal procedure, even though it be in proceedings so highly important as the process by which

---

[6]As amended in 1979, RCW 26.32.210(2) no longer requires filing of the statement prior to entry of the order of relinquishment. This strongly suggests the legislature did not regard the requirement as a substantive provision of the adoption chapter, nor as any condition precedent to entry of the order.

[7]RCW 26.32.220 requires only a "single preplacement report . . . for a husband and wife who join as petitioners in an adoption proceeding."

a party is brought into court, this court has never exacted anything more than a substantial compliance with the statute. Amendable defects, such as the one in question, have not been held fatal unless injury directly caused thereby has been shown, and it seems to us now that this is the just rule. Any other usually leads to a sacrifice of substance to form, and to decisions which shock the sense of justice and right, even in minds trained to the technicalities of the law.

*Whitney v. Knowlton, supra* at 322–23. *Accord, First Fed. Sav. & Loan Ass'n v. Ekanger,* 93 Wn.2d 777, 613 P.2d 129 (1980). *McCormick v. Okanogan County,* 90 Wn.2d 71, 578 P.2d 1303 (1978); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025, 15 L. Ed. 2d 539, 86 S. Ct. 644 (1966). Also pertinent is *In re Dingman,* 110 Wash. 513, 188 P. 755 (1920), in which the court held that the failure to set forth jurisdictional facts in an order of adoption, as required by statute, did not render the order void. The *Dingman* court reasoned:

This is not a case of seeking to avoid the order because the adopting parents were not in fact residents of the state at the time of the entering of the order of adoption. Whether or not the order should be set aside upon an affirmative showing, in a proper proceeding, that they were not then residents of the state, is quite another question. Indeed, in this case the evidence shows that they were residents of the state at the time the consent of appellant to the adoption was given and the order of adoption entered.

*In re Dingman, supra* at 522. We believe that the lack of a sworn statement was an amendable defect and that the failure to file the sworn statement in a timely manner resulted in no prejudice to the Santores. Consequently, we believe the relinquishment order was validly entered on the basis of substantial compliance with RCW 26.32.220 and former RCW 26.32.210(2).

Relying on *In re Adoption of Minor,* 29 Wn.2d 759, 189 P.2d 458 (1948), the Santores next challenge the validity of the relinquishment order because Richard Santore, as

presumptive father, was not given notice of the relinquishment hearing where the court, in effect, dispensed with the need for his consent to the adoption. Clearly, Richard Santore, as presumptive father, was entitled to notice and would in the absence of such notice have standing to challenge the relinquishment order and any final decree of adoption. In fact, he has done just that in these proceedings. At the consolidated hearing it was determined (conceded), however, that the deceased Murphy, not Richard Santore, was the natural father. The Santores having submitted the issue and having had their day in court, the due process concerns of *In re Adoption of Minor, supra,* were satisfied. *In re Gordon,* 19 Wn.2d 714, 144 P.2d 238 (1943). Inasmuch as Richard Santore is not the father of the child, it was not necessary that he consent to the adoption, and the order of relinquishment was not invalid for lack of such consent.

Next, the Santores argue that Mrs. Santore's consent to adoption was ineffective because she did not receive independent legal advice prior to signing the consent. They have cited no authority from any jurisdiction to support this argument except for *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972). In *Friedlander,* where a prenuptial agreement made provision for the wife that was disproportionate to the means of the husband, the court held that the husband had a burden of demonstrating: (1) he made full and fair disclosure to the wife of the amount, character, and value of the property involved; and (2) the wife signed the agreement freely and voluntarily on independent advice with full knowledge of her rights. *Friedlander v. Friedlander, supra* at 302–03. *Friedlander* is readily distinguishable from this case due to the unique trusting relationship between parties to a prenuptial agreement. Furthermore, we note that Mrs. Santore had an attorney available who was representing her in the dissolution proceedings.

■ The Santores also contend that Mrs. Santore revoked her consent before it was approved by the court. The trial court found, however, that the consent was approved by implication on October 24, 1979, at the time the relinquishment order was entered. Mrs. Santore did not file the revocation until November 19, 1979. Once the order was entered approving the consent, the consent became irrevocable except for fraud practiced by the adopting parents or mental incompetency of Mrs. Santore at the time she signed the consent. RCW 26.32.030(2) (former RCW 26.32.070(1)); *In re Adoption of Jackson,* 89 Wn.2d 945, 578 P.2d 33 (1978); *In re Adoption of Baby Nancy,* 27 Wn. App. 278, 616 P.2d 1263 (1980). The trial court found that no fraud was practiced on and no duress or pressure of any kind was exerted against Mrs. Santore by the adopting parents, Dr. Kesling, or Mr. Mason. The court also found that Mrs. Santore was mentally competent at the time she signed the consent. Accordingly, her consent became irrevocable when the court approved it.

■ Finally, the Santores contend that the trial court erred by disregarding the report of the court–appointed guardian ad litem.[8] They argue that the report recommends that the child be returned to them. We read the report, however, to recommend a change of custody only if the trial court should grant the writ of habeas corpus. In any event, the recommendation of a guardian ad litem is in no way binding on a trial court.

We have reviewed the Santores' other assignments of error and find they do not merit discussion. Accordingly,

---

[8]The report reads in pertinent part:

"With regard to the immediate physical custody of the child, the guardian recommends that the child be left in his present environment, even if the Court finds for the natural mother, *if* the highest appellate decision will be made in a matter of 6 weeks or less. If, however, appellate review would require at least 6 weeks, the guardian recommends an immediate change in custody be made, even though there would be a second change in the custody if the appellate Court reverses this Court."

the trial court's order dismissing the petition for a writ of habeas corpus is affirmed.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied March 6, 1981.

Review denied by Supreme Court May 8, 1981.