[No. 8504–2–I.   Division One.   July 21, 1980.]

*In the Matter of the Adoption of* BABY GIRL K.

*Malcolm L. Edwards, Robert G. Sieh, Edwards & Barbieri, James G. Leach, Joseph D. Murphy, Geraghty & Vanderhoef,* and *John David Nellor,* for appellant.

*John D. Blankinship* and *Montgomery, Purdue, Blankinship & Austin,* for respondent.

RINGOLD, J.—The mother of Baby Girl K filed a petition to revoke the written surrender of her child to a licensed[1] child placement agency, Burden Bearers–Social Services (Burden Bearers). The father of the child, as well as Burden Bearers, resisted the petition. The trial court sustained the challenge and ordered the child returned to her mother. Both the trial court and this court stayed the order pending a decision on appeal. By stipulated order, the prospective adoptive parents intervened after entry of judgment, and they joined Burden Bearers and the child's father in this appeal from that judgment. We reverse the trial court and hold that the surrender of the child was lawful and irrevocable.

The biological parents were married about 3 weeks prior to the birth of their daughter, Baby Girl K. On July 23, 1979, after the mother's eighteenth birthday, the parents met with a social worker from Burden Bearers. The baby was almost 2 months old, and the parents felt they were neither emotionally nor financially able to adequately care for her. The purpose of the meeting was to discuss placing the baby for adoption.

During the meeting, as an alternative to surrendering their child, the parents considered placing the child temporarily in a foster home while they tried to resolve their marital problems. Living with the mother's parents was suggested as another alternative. Separation of the parents and welfare to aid the child were discussed. The social worker proposed waiting a few days before making their decision. These options were rejected, and the parents decided to sign the surrender agreements.

The mother read the surrender instrument several times. The social worker told her it was irrevocable and explained that "irrevocable" meant that she could not change her

---

[1]Licensed pursuant to RCW 74.15.

mind. She signed it and thereby agreed to place her child with Burden Bearers for adoption pursuant to former RCW 26.37.010.[2] The father signed a similar agreement. The baby remained in the custody of the biological parents after they signed these documents.

In the morning of July 24, 1979, the mother telephoned Burden Bearers and renounced her surrender of custody. This was satisfactory to the agency, and the mother was told that the prospective adoptive parents would be informed that the child was unavailable. That afternoon, however, the mother again telephoned and asked for the proceedings to go forward.

On July 25, 1979, Burden Bearers filed the surrenders and a verified petition for an order authorizing the parents' relinquishment of permanent custody pursuant to RCW 26.36.010. On that day, the court entered an order authorizing the relinquishment, permanently depriving the natural parents of all parental rights in the child, awarding permanent custody to Burden Bearers and authorizing Burden Bearers to consent to the adoption of the child. The order also authorized the prospective adoptive parents to file a petition for adoption.

On July 26, 1979, the child was picked up by Burden Bearers from the home of the maternal grandparents. She was subsequently placed in the home of the prospective adoptive parents.

On July 27, 1979, the mother, through an attorney, gave notice to Burden Bearers' attorney that she was withdrawing her written surrender and demanding the return of her child. On that day, she signed and verified a petition for rescission of her surrender. The petition was filed a few days later, after she commenced a separate dissolution proceeding against her husband. The petition for rescission alleged in part:

---

[2]Laws of 1975, 2d Ex. Sess., ch. 42, § 34. The 1979 amendment of RCW 26.37-.010 does not apply to this case. Laws of 1979, 1st Ex. Sess., ch. 165, § 18.

On Monday, July 23, 1979, the petitioner was induced to sign a consent to the adoption of her daughter by fraud and duress of her husband, . . . and by fraud and overreaching practiced by the adoption agency, Burden Bearers. That agency purported to perform a counselling service for the petitioner and her husband, but in fact it amounted to an intensive sales campaign for relinquishment of the baby for adoption by a recipient selected by that religious organization.

The trial court found no fraud or overreaching by Burden Bearers and did not rule with respect to the alleged fraud and duress by the natural father.[3] Instead the trial court determined that the natural mother did not fully understand and appreciate the legal effect of the instrument she signed to surrender her child. The court's conclusion of law states:

Because of her inexperience and emotional stress at the time of her signature of said instrument, she was uncertain and undecided as to the advisability of permanent relinquishment of her baby for adoption, and accordingly, her execution of her said instrument was not voluntary, and is void.

Conclusion of law B. The trial court also concluded the instrument, executed prior to the entry of the order of relinquishment, violated RCW 26.36.010. As a third ground for granting the petition, the trial court held that the order of relinquishment was void due to the failure to obtain a report from a next friend of the child and the failure to hold a hearing to review such a report.

### Surrender and Relinquishment

We first consider whether the trial court was correct in its conclusion that the surrender was void because it was executed prior to the order of relinquishment.

---

[3]The mother does not contend the trial court should have entered such findings. If the alleged fraud and duress by the father were disputed on appeal, the absence of findings would require us to imply a finding against the party having the burden of proof, the respondent mother. *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 584 P.2d 968 (1978); *Rhodes v. Gould*, 19 Wn. App. 437, 576 P.2d 914 (1978).

■ The procedures utilized by Burden Bearers are statutory and the propriety of action taken must be measured against the language of the relevant statutes. *In re Adoption of Jackson*, 89 Wn.2d 945, 947, 578 P.2d 33 (1978); *In re Adoption of Hernandez*, 25 Wn. App. 447, 451, 607 P.2d 879 (1980). Prior to its amendment by Laws of 1979, 1st Ex. Sess., ch. 165, § 18, RCW 26.37.010 provided in part:

Any benevolent or charitable society incorporated under the laws of this state for the purpose of receiving, caring for or placing out for adoption, or improving the condition of orphan, homeless, neglected or abused minor children of this state shall have authority to receive, control, and dispose of children under eighteen years of age under the following provisions:

(1) When the father and mother or the person or persons legally entitled to act as guardian of the person of any minor child shall, in writing, surrender such child to the charge and custody of said society, such child shall thereafter be in legal custody of such society for the purposes herein provided.

. . .

(5) When any child shall have been surrendered in accordance with any of the preceding clauses and such child shall have been accepted by such society, then, (but not otherwise), the rights of its natural parents or of the guardian of its person (if any) shall cease and such corporation shall become entitled to the custody of such child, and shall have authority to care for and educate such child or place it either temporarily or permanently in a suitable private home in such manner as shall best secure its welfare. Such corporation shall have authority when any such child has been surrendered to it in accordance with any of the preceding provisions, and it is still in its control, to consent to its adoption under the laws of Washington. The custody or control of any such child by any such corporation or by any other corporation, institution, society or person may be inquired into, and, in the discretion of the court, terminated at any time by the superior court of the county where the child may be, upon the complaint of any person, and a showing that such custody is not in the interest of the child.

Relevant portions of RCW 26.36.010 provide:

It shall be unlawful for any person, partnership, society, association, or corporation, except the parents, to assume the permanent care, custody, or control of any minor child unless authorized so to do by a written order of a superior court of the state. It shall be unlawful, without the written order of the superior court having first been obtained, for any parent or parents to in any wise relinquish or transfer to another person, partnership, society, association, or corporation, the permanent care, custody, or control of any minor child for adoption or any other purpose, and any such relinquishment or transfer shall be void: . . .

RCW 26.36.040 reads in part:

No maternity hospital, physician, midwife, or nurse, or any other person shall directly or indirectly dispose of infants by placing them in family homes for permanent care or for adoption, until after the order of relinquishment has been entered: . . .

■ The parties have exhaustively argued the meaning of these and other statutory provisions. Their application to this case, however, is rather straightforward if we assume, without deciding, that the mother is correct in her argument that RCW 26.36.010 and .040 require a court order to transfer the permanent care, custody and control of a minor child to a licensed child placement agency. *See In re Adoption of Hernandez, supra.* Under this assumption, the only issue is whether the trial court correctly held that obtaining the written surrender prior to the court order violated RCW 26.36.010. We hold that it was proper to first obtain the written surrender and then obtain the order of relinquishment because, under the facts of this case, the surrender did not "in any wise" transfer the permanent care, custody and control of the child.

Whether an uncontested relinquishment is pursued through the auspices of a licensed child placement agency or otherwise, the court order must be supported by evidence of the parents' willingness to give up their child for

adoption. The statutes, therefore, contemplate the presentation of a previously obtained surrender to the trial court. That surrender does not transfer permanent care, custody or control because former RCW 26.37.010(5) gives it no effect until the agency accepts the child. It is undisputed that Burden Bearers accepted the child and thereby assumed its permanent care, custody or control only after issuance of the order of relinquishment. Burden Bearers, therefore, complied with the statutory procedures.[4] The trial court erred in holding otherwise.

### NEXT FRIEND'S REPORT

We next consider whether the trial court was correct in its conclusion that the order of relinquishment was void because it was not preceded by a hearing on the report of a next friend of the child concerning the advisability of the relinquishment.

This case was heard in King County, and the parties dispute the application of King County Superior Court Local Rule 93.04(2) and RCW 26.32 to this issue. LR 93.04(2) automatically appoints a next friend of a minor child whose adoption is sought unless otherwise ordered by the court. It reads:

> *Appointment of Next Friend.* Unless otherwise specially ordered by the court, the Adoption Service Department without separate order shall be deemed appointed the next friend of a child under eighteen years of age whose adoption is sought.

This rule did not apply; an order of relinquishment, not an adoption, was sought. Under former RCW 26.32.060,[5] an adoption proceeding could be commenced only by filing a petition for adoption. No such petition was filed here.

---

[4]Even under our assumption that a prior court order is required, nothing in our analysis prevents a child placement agency from assuming the temporary care, custody and control of a minor child without a prior court order and subsequently obtaining a court order and assuming permanent care, custody and control.

[5]Laws of 1955, ch. 291, § 6. The 1979 amendment does not apply to this case. Laws of 1979, 1st Ex. Sess., ch. 165, § 16.

Similarly, former RCW 26.32.090[6] was inapplicable because it required the appointment of a next friend only upon the filing of a petition for adoption. Where orders of relinquishment were sought, as in this case, former RCW 26.32.070(3)[7] allowed, but did not require, the appointment of a next friend. The trial court erred in its conclusion that a hearing on the report of the next friend was required to validate the relinquishment order.

## VOLUNTARINESS

The last issue is whether the findings and conclusions concerning voluntariness warrant a refusal to give legal effect to the surrender.

■ The trial court found that because the mother was inexperienced and undergoing emotional stress, she was uncertain and indecisive about the advisability of permanently relinquishing her baby. The only other relevant finding is that the mother did not fully understand the legal effect of the surrender. This finding tends to support the conclusion of involuntariness only insofar as it borrows from the criminal law and equates lack of understanding with involuntariness. *See State v. Butler,* 17 Wn. App. 666, 564 P.2d 828 (1977). None of these findings supports a conclusion that the mother acted without volition. We hold that a lack of full understanding of the consequences, coupled with inexperience, emotional stress, uncertainty and indecisiveness are insufficient findings to allow repudiation of the surrender.[8]

---

[6]Laws of 1971, 1st Ex. Sess., ch. 172, § 1. The 1979 amendment does not apply to this case. Laws of 1979, ch. 155, § 75.

[7]Laws of 1975, 2d Ex. Sess., ch. 42, § 29. This section was repealed by Laws of 1979, 1st Ex. Sess., ch. 165.

[8]In its oral opinion, when weighing the evidence, the trial court indicated that the burden of proving voluntariness was on Burden Bearers. This is another sign that the court borrowed concepts from the criminal law, where the State generally has the burden of proving voluntariness. Were we to uphold the trial court's grounds for allowing the mother to repudiate the surrender, we would have to remand for a determination of whether the mother proved these grounds.

■ The trial court found that Burden Bearers did not commit fraud and did not overreach. Absent fraud, deceit, coercion, or mental incompetency at the time of the execution of an instrument, one is deemed by law to understand its contents if one has signed of one's own free will (voluntarily), knowing that one is signing an agreement. *Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 529 P.2d 810 (1974); *see also In re Adoption of Hernandez, supra.* In *Batton v. Massar,* 149 Colo. 404, 411, 369 P.2d 434, 437 (1962), the Colorado Supreme Court reversed a trial court ruling similar to the one in this case and stated:

> It is not the law that one may avoid the consequences of his voluntary acts, acts not induced by fraud, duress, coercion, etc., by proof that he or she: "did not realize the seriousness and finality of the papers she [or he] was signing." Such a rule of law would render every contract voidable at the whim of the maker.

■ The foregoing discussion is particularly apposite in the adoption setting where certain policies favor giving full legal effect to a surrender and subsequent relinquishment. The surrender, relinquishment and adoption statutes are intended to protect the best interests of the child, *In re Sage,* 21 Wn. App. 803, 806, 586 P.2d 1201 (1978), and there is a strong public interest in the finality of these procedures. *See In re Adoption of Jackson, supra; In re Adoption of Hernandez, supra.* It would be contrary to both of these policies to allow a natural parent to subject a child to another change of custody after a volitional execution of a surrender agreement. Repudiation of the surrender is also contrary to the policy of protecting new family relationships from disturbance by the natural parent. *See In re Adoption of Reinius,* 55 Wn.2d 117, 346 P.2d 672 (1959). If the trial court's ruling were upheld, countless adoptions would be jeopardized, and the strong public interest in the integrity of the adoptive process would be undermined. *See In re Sage, supra.*

We have considered countervailing policies to prevent ill-conceived and unnecessary adoption and to protect the

natural parents from abrupt decisions to relinquish custody. *See In re Adoption of Reinius, supra.* These interests are adequately protected by the procedure followed in this case. It was undisputed that numerous alternatives were considered and rejected, including the proposal of waiting a few days before signing the surrender. The involuntariness ruling was based solely on the mother's characteristics, not lack of volition, nor the failure to comply with the statutes, nor the fault of any other party.

We hold that the foregoing policies underlying the surrender, relinquishment and adoption statutes require sustaining a surrender of custody that is challenged only by proof of inexperience, indecisiveness, uncertainty, emotional stress and a failure to fully comprehend the effect of the surrender.[9] *See Batton v. Massar, supra; Acedo v. State Dep't of Pub. Welfare,* 20 Ariz. App. 467, 513 P.2d 1350 (1973). A child is not a chattel to transfer and retransfer where there has been a misunderstanding of the consequences. Absent proof that the best interest of the child is contrary, society is entitled to rely on the finality of adoption procedures without reason to fear the effect of unexpressed misunderstandings by a natural parent.

Reversed.

SWANSON and DURHAM–DIVELBISS, JJ., concur.

Reconsideration denied October 29, 1980.

Review denied by Supreme Court January 19, 1981.

---

[9]The mother alleges no additional facts to support the trial court's conclusion. It is, therefore, unnecessary to remand for additional findings on this issue.