[No. 4662-1-III.  Division Three.  February 17, 1982.]

*In the Matter of* INFANT CHILD PERRY.

ADVENTIST ADOPTION AND FAMILY SERVICES, *Appellant,* v. CLAUDIA MARIE PERRY, *Respondent.*

*Arthur D. Klym,* for appellant.

*Eugene G. Schuster* and *Critchlow & Williams,* for respondent.

GREEN, J.—On March 20, 1981, a child was born to Claudia Perry. On March 24, outside the presence of the court, she signed a consent form relinquishing her child to the Adventist Adoption and Family Services agency in Pasco. Minutes later it was approved by the court at a relinquishment hearing, without the presence of a court reporter. On April 6, Miss Perry moved to revoke the relinquishment. This motion was granted and the agency appeals.

The agency contends the court erred in concluding Miss Perry's relinquishment was obtained under circumstances amounting to fraud. It is argued this conclusion is not supported by the record and is a misapplication of the law. The agency further asserts the court was prejudiced in Miss Perry's favor and, therefore, abused its discretion in granting her motion to revoke the relinquishment. We affirm.

██ The agency has not assigned error to any specific findings of fact as required by RAP 10.3(g). Consequently, the findings become the established facts and our review must be limited to whether they support the conclusions of law and judgment. *Xerox Corp. v. King County,* 94 Wn.2d 284, 617 P.2d 412 (1980); *In re Santore,* 28 Wn. App. 319, 323, 623 P.2d 702 (1981); *Morgan v. Irving,* 8 Wn. App. 354, 506 P.2d 316 (1973). Although there is conflicting evidence in the record, it is not our function to substitute our evaluation of factual issues for that of the trial court. *Davis v.*

*Department of Labor & Indus.,* 94 Wn.2d 119, 124, 615 P.2d 1279 (1980). In any event, our review of the record indicates there is sufficient evidence to support the findings.

The trial court found Miss Perry, a single woman, was 28 years old, a resident of Pontiac, Michigan, and a member of the Seventh–Day Adventist Church. In the fourth month of her pregnancy she consulted a Michigan physician who was also a member of the church. On her first appointment, and during continued visits, the physician encouraged her to place her child with the Adventist adoption agency in Pasco, Washington, the only Adventist agency in the nation. Eventually she agreed. The physician then contacted the agency, which supplied her with certain forms that she completed and returned.

Miss Perry traveled to Pasco at the agency's expense where she was met by an agency member. She was housed with a lady who was a member of the Adventist church and, during the following 8 weeks, attended Adventist church services and social events. All her expenses were paid by the agency and she was counseled on a regular basis by agency counselors. The counselors, who were not attorneys, gave essentially all the legal advice she received.

On March 20, Miss Perry began labor and made a prearranged call to the agency who was to send a member to the hospital to assist in her delivery. On March 24, after her child was born, she signed a relinquishment form in the presence of the agency's attorney and an agency employee. Immediately thereafter a relinquishment hearing was held without a court reporter in the judge's chambers. At that hearing, the court merely inquired whether the agency attorney had fully explained Miss Perry's rights and she acknowledged he had.

Miss Perry returned to Michigan on Wednesday, March 25, the day after she signed the relinquishment. On Monday, April 6,[1] she contacted counsel for legal advice and a

---

[1] Miss Perry testified that on the preceding Monday, March 30, she contacted

motion was filed to set aside the relinquishment order. She also moved to restrain the agency from placing the child for adoption pending final determination of her motion.

The court additionally found that while Miss Perry was living within the agency environment, she

became engulfed in an environment, the purpose of which was the relinquishment of the Petitioner's child.

. . .

. . . . [She] repeatedly threatened to return to Michigan but was encouraged to remain and receive additional counseling which [she] did. There was substantial indecision by [her] but such indecision was overcome by repeated counseling encouraging [her] to relinquish her child.

. . . [I]t was explained to [her] during one of her counseling sessions, prior to [her] executing the relinquishment of her parental rights, that another mother handled by the Agency had changed her mind seven months after the relinquishment, and successfully reacquired her child.

. . . [N]either the Agency or its agents or any one else ever fully and clearly explained to [her] her right to retain her child and return to Michigan.

. . . [She] was in an environment unfamiliar and away from her family and friends, and . . . every member of that environment was committed to [her] relinquishing the minor child.

. . . [She] never received independent counsel regarding her legal rights relative to the relinquishment and her options regarding the relinquishment were never adequately explained to her.

. . .

. . . [T]he environment in which [she] was placed for over eight weeks created an influence which was overpowering and suggestive of no options regarding relinquishment.

. . . [S]aid environment created an atmosphere of repayment without option, *i.e.*, for all of [her] expenses being paid she would relinquish the minor child.

Based on these findings, the court concluded

the judge who had approved the relinquishment to withdraw her consent. He referred her to an attorney.

the execution of the Relinquishment and Surrender of the Minor Child was obtained without legal advice, without knowledge of Petitioner's options relative thereto and under circumstances which amounted to fraud, and/or overreaching and/or duress.

The court declared the relinquishment void and the child was ordered returned to the mother.

The agency's position is that (1) relinquishment is not revocable except for fraud which requires proof of nine elements, RCW 26.32.030(2), *Swanson v. Solomon*, 50 Wn.2d 825, 314 P.2d 655 (1957); and (2) neither the evidence nor the findings support these elements. We disagree.

█ Not all forms of fraud require proof of the nine elements outlined in *Swanson*. We stated in *In re Adoption of Hernandez*, 25 Wn. App. 447, 455, 607 P.2d 879 (1980):

Fraud . . . in its general sense, is deemed to comprise anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another, or by which an undue and unconscientious advantage is taken of another.

37 Am. Jur. 2d *Fraud and Deceit* § 1, at 19 (1963). Undue influence and overreaching are species of fraud and will vitiate a transaction. See *Peters v. Skalman*, 27 Wn. App. 247, 255, 617 P.2d 448 (1980); *In re Adoption of Baby Girl K*, 26 Wn. App. 897, 905, 615 P.2d 1310 (1980); *McCutcheon v. Brownfield*, 2 Wn. App. 348, 467 P.2d 868 (1970). For other illustrations, *see Methodist Mission Home v. N.A.B.*, 451 S.W.2d 539 (Tex. Civ. App. 1970); *D.P. v. Social Serv. & Child Welfare Dep't*, 19 Utah 2d 311, 431 P.2d 547 (1967); Annot., 74 A.L.R.3d 527, § 2 (1976); Annot., 74 A.L.R.3d 421, § 9 (1976); Annot., 50 A.L.R.3d 918, § 7 (1973). The essence of undue influence is unfair persuasion.

The ultimate question is whether the result was produced by means that seriously impaired the free and competent exercise of judgment. Such factors as the unfairness of the resulting bargain, the unavailability of independent advice, and the susceptibility of the person

persuaded are circumstances to be taken into account in determining whether there was unfair persuasion, . . . Restatement (Second) of Contracts § 177, comment *b* at 491 (1981).

Here, the court's findings show the relinquishment procedure was commenced after repeated encouragement by Miss Perry's physician. The physician, not Miss Perry, contacted the agency. She spent her final months of pregnancy away from her home, engulfed in the agency's environment. During that time everyone advocated that she place her child for adoption. She was never clearly informed by the agency that even though it had spent money on her behalf, she was nevertheless free to retain her child and return to Michigan. She was not encouraged to consider alternatives and had no opportunity to reflect or seek independent advice. Although she was told the relinquishment was final, she was also improperly advised that another mother changed her mind 7 months after relinquishment and recovered her child. She signed the relinquishment in the presence of the agency's attorney only minutes before the court approved it in chambers. Those proceedings were not recorded.[2] Additionally, she challenged her relinquishment immediately upon returning to Michigan.[3] The findings further show this environment created in Miss Perry's mind an obligation, without option, to repay the agency's expenses by relinquishing her rights to her child. In view of these findings, the close relationship of confidence that must have developed and Miss Perry's dependency upon the agency, we hold the court's conclusion must stand and the relinquishment be set aside.

---

[2] This case illustrates the importance of conducting all relinquishment hearings on the record. Had that procedure been followed here, it would have clarified the question presented in this appeal.

[3] Miss Perry testified that on her plane flight back to Michigan on March 25, she was sobbing and the lady in the adjacent seat sought to comfort her. When this lady learned what had happened and how Miss Perry felt, she suggested she consult legal counsel upon her arrival in Michigan.

■ The agency argues the public interest in finality of relinquishments would not be furthered by allowing revocation here. *In re Adoption of Baby Girl K, supra,* cited by the agency, is distinguishable. In that case the prospective adoptive parents intervened. The court stated, at page 906: "Absent proof that the best interest of the child is [to the] contrary, . . ." adoption procedures should be final. It was also noted at page 905, the policy of finality is based upon protecting the child from being subjected to continued changes in custody and the adoptive family from the uncertainty of losing a child after emotional ties have developed. Here, Miss Perry's child was in foster care which is temporary and not conducive to developing psychological parent–child bonds. *See In re Adoption of Reinius,* 55 Wn.2d 117, 120 n.2, 346 P.2d 672 (1959); J. Goldstein, A. Freud, & A. Solnit, *Beyond the Best Interests of the Child,* ch. 2, at 24 (1979).

In *In re Adoption of Baby Girl K, supra,* and *In re Adoption of Hernandez, supra,* also cited by the agency, the parents had been extensively counseled as to available alternatives and neither court found facts sufficient to establish fraud. In both cases, the mothers vacillated between retaining custody of and relinquishing their children. In this case, Miss Perry began proceedings to revoke her consent immediately upon leaving the agency environment and returning to her home. Additionally, the court's findings show its ruling was based upon the agency's actions, not the mother's uncertainty. We note the adoption statute is also concerned with preventing ill–conceived and unnecessary relinquishments. *See In re Adoption of Reinius, supra* at 121; *In re Adoption of Baby Girl K, supra* at 905–06.[4] In light of the court's findings, the cases relied

---

[4]This is implicit in RCW 26.32.030(2), which requires a parent to be advised of the effect of a consent to relinquish. The consent form Miss Perry signed did not inform her that the relinquishment would have no force or effect until the court approved it, or that it was not revocable except for fraud as required by RCW 26.32.030(2). These omissions lend force to the court's finding that Miss Perry believed she had no option but to sign the consent form.

upon by the agency are not controlling.

The agency also contends the trial judge was prejudiced in favor of Miss Perry and, consequently, was unable to conduct a fair hearing. To support this contention, the agency relies upon the court's oral opinion rendered after the court heard the evidence. In that opinion, the court explained its findings in detail. Considering this opinion as a whole, we find no prejudice. It is apparent the court reached its decision after weighing the evidence presented during the trial.

Affirmed.

MUNSON, J., concurs.

ROE, A.C.J. (dissenting)—I must dissent since I find no fraud upon this mature mother of two children. I am unable to determine from the record whether the first child was born as issue of petitioner's first marriage. The testimony reflects she discussed with a social worker giving up this first child, but declined to do so. She kept her older child and, not uncommonly, found that it was better to relinquish her second one. She had 9 months to reach this decision. There is no showing of uncertainty, or misadvice. The trial court found she was "engulfed" by the agency and assumed because it had treated her kindly in all respects and accepted her, this created an atmosphere of repayment without option. Having kept her older child, she could not contend she did not know she could keep her younger one. She simply changed her mind. That is not fraud.

The unfortunate aspect is the uncertainty and effect on other relinquishments where good people have helped a woman in need and tried to provide for the unfortunate child.

Reconsideration denied March 12, 1982.