[No. 29675-6-II. Division Two. August 3, 2004.]

*In the Matter of the Welfare of J.N.*

---

*Peter B. Tiller* (of *The Tiller Law Firm*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Natalee R. Fillinger, Assistant,* and *Margaret C. Holm,* for respondent.

QUINN-BRINTNALL, C.J. — T.N. appeals the trial court's denial of her petition to revoke the relinquishment of parental rights. T.N. was 15 years old when she consented to relinquishing her parental rights to her two-month-old son. Nearly a year after his adoption, T.N. filed a petition to revoke the relinquishment under RCW 26.33.160 and CR 60(b)(1), (3), and (4), alleging fraud, duress, and mental incompetency, and asserting that the Department of Social and Health Services (DSHS) failed to follow statutory procedures.

The trial court found that T.N. failed to prove that she was incompetent or that her relinquishment was obtained by fraud or duress. It also held that DSHS's failure to provide her with a photocopy of the Consent to Termination/Adoption and Waiver of Right to Receive Notice of Proceedings (relinquishment documents), which she had voluntarily signed with assistance of counsel, did not entitle her to vacate the adoption. We agree and affirm.

## FACTS

T.N. was born on March 22, 1986, and was 15 years old when she gave birth to a son, on June 15, 2001. At the time of the baby's birth, T.N. was living with her foster mother, Patty Ashby. Because of concerns for the baby's safety, the child was removed from T.N.'s care between July 3-25, 2001.[1] He was returned to T.N. on July 25, 2001, where he remained with her until August 6, 2001, when T.N. began the process to relinquish her parental rights.

T.N. signed the relinquishment documents at DSHS's office on August 6. Before signing, she reviewed the document line by line with her attorney.

On August 8, T.N.'s guardian ad litem (GAL) contacted T.N. to determine that her decision to relinquish was voluntary. The GAL found T.N. acted voluntarily and filed a stipulation attesting to the voluntariness of T.N.'s relinquishment. The trial court entered an order terminating parental rights by relinquishment on August 15, 2001. B.C. and C.C. adopted the baby in May 2002.

Less than one year after the order terminating her parental rights, but after the adoption,[2] T.N. moved under CR 60 to vacate the adoption, claiming that at the time she filed the relinquishment documents she felt that she had no choice but to relinquish the child and that Ashby, her foster mother, and DSHS continually advised her that she should relinquish the child.

Ashby testified that T.N. herself insisted on relinquishment and adoption and that Ashby had warned T.N. to carefully consider her decision because of the ramifications. The GAL also testified that she spoke with T.N. after T.N. had begun the relinquishment process and that she found no hesitation or undue influence in T.N.'s relinquishment

---

[1] When the baby was not with T.N., he was cared for by C.C. C.C. and her husband adopted him. During his first two months of life, the baby spent 29 days with T.N. and 31 days with C.C.

[2] Our record does not contain the date the petition was filed, but DSHS concedes it was timely.

decision. Finally, at the time T.N. signed the relinquishment document, T.N.'s attorney went through the document line by line, including the notice of her ability to revoke relinquishment within 48 hours. Based on the above testimony, the trial court found no clear, cogent, or convincing evidence of fraud, duress, or mental incompetence and refused to vacate the adoption. The trial court denied T.N.'s request to vacate the adoption on November 19, 2002. T.N. appeals.

The issues on appeal center on T.N.'s relinquishment: (1) Does the superior court have jurisdiction to hear an adoption of the dependent child of a dependent child? (2) Did the failure to provide T.N. with a photocopy of the relinquishment documents vitiate her consent? (3) Did the GAL properly perform her statutory duties? (4) Did T.N. prove by clear, cogent, and convincing evidence that she signed the relinquishment documents while incompetent or as a result of fraud and duress on the part of her foster mother, Ashby, the future adopting mother, C.C., and DSHS?

## ANALYSIS

SUBJECT MATTER JURISDICTION

T.N. asserts that the superior court lacked jurisdiction to enter an adoption decree involving the dependent minor child of a dependent minor child, arguing that under RCW 13.04.030 all proceedings regarding a dependent minor fall within the exclusive jurisdiction of the juvenile court.

■ Initially we note that the juvenile court is not a separate level of court but a division of the superior court. RCW 13.04.021.[3]

---

[3] The statute reads:

(1) The juvenile court shall be a division of the superior court. In judicial districts having more than one judge of the superior court, the judges of such court shall annually assign one or more of their number to the juvenile court division. In any judicial district having a court commissioner, the court commissioner shall have the power, authority, and jurisdiction, concurrent with a juvenile court judge, to hear all cases under this chapter and to enter judgment and make orders with the same power, force, and effect as any judge

■ Chapter 26.33 RCW governs adoption petitions and defines the term "court" when used in adoption proceeding statutes as "the superior court." RCW 26.33.020(5). In addition, RCW 26.33.030(1) requires petitions for adoption to be "filed in the superior court of the county in which the petitioner is a resident or of the county in which the adoptee is domiciled." Hearings on adoption petitions must also be held in superior court. RCW 26.33.060. There is no provision in chapter 26.33 RCW that separates jurisdiction based on the age or status of the biological parent relinquishing custody. The adoption statute further provides that "[i]f the court determines . . . that all necessary consents to adoption are valid, . . . the court shall enter a decree of adoption pursuant to RCW 26.33.250." RCW 26.33.240(3). There is no support for T.N.'s argument that the superior court lacked subject matter jurisdiction to accept her relinquishment documents and to approve the adoption.

CR 60 MOTION

■ T.N. appeals the denial of her CR 60 motion to vacate her biological son's adoption decree. We review for abuse of discretion. *In re Dependency of M.D.*, 110 Wn. App. 524, 530, 42 P.3d 424 (2002). A trial court abuses its discretion if it bases its decision on an incorrect legal standard or the facts do not meet the requirements of the standard. *In re Marriage of Lawrence*, 105 Wn. App. 683, 686 n.1, 20 P.3d 972 (2001).

---

of the juvenile court, subject to motion or demand by any party within ten days from the entry of the order or judgment by the court commissioner as provided in RCW 2.24.050. In any judicial district having a family law commissioner appointed pursuant to chapter 26.12 RCW, the family law commissioner shall have the power, authority, and jurisdiction, concurrent with a juvenile court judge, to hear cases under Title 13 RCW and chapter 28A.225 RCW as provided in RCW 26.12.010, and to enter judgment and make orders with the same power, force, and effect as any judge of the juvenile court, subject to motion or demand by any party within ten days from the entry of the order or judgment by the court commissioner as provided in RCW 2.24.050.

(2) Cases in the juvenile court shall be tried without a jury.
RCW 13.04.021.

FAILURE TO PROVIDE A COPY OF THE RELINQUISHMENT DOCUMENTS

■ T.N. claims that she never received a copy of the adoption consent and was not aware of the 48-hour revocation procedure available to her. T.N. further argues that DSHS breached its duty to her by failing to provide to her these necessary copies. Although it is unquestionably the best practice for a birth parent to receive a copy of the relinquishment documents, the statute does not expressly require that a copy be provided.[4] *See* RCW 26.33.080, .090. But the record here shows that T.N. was aware of her 48-hour revocation option.

Before signing the document, T.N.'s attorney went through the document line by line to ensure that T.N. understood every part of the relinquishment, including the ability to revoke relinquishment within 48 hours. In addition, after the document was signed, but before it had been accepted by the court, the GAL told T.N. that she had a right to revoke her consent. We see no reason to revoke an otherwise valid adoption on the ground that the relinquishing parent did not receive a photocopy of documents she knowingly and voluntarily signed. The trial court did not abuse its discretion by failing to vacate the adoption decree on the ground that T.N. was not given a photocopy of the documents she signed relinquishing her parental rights and waiving notice of future proceedings.

STATUTORY DUTIES OF THE GAL

■ T.N. further argues that her court-appointed GAL did not satisfy her statutory obligations because she failed to spend adequate time with T.N or adequately investigate T.N.'s situation. T.N. cites to the duties of a GAL set forth in RCW 13.34.105. This statute requires a GAL to "investigate, collect relevant information about the child's situation, and report to the court factual information regarding the best interests of the child." RCW 13.34.105(1)(a). But T.N.'s reliance is misplaced. Chapter 13.34 RCW is a

---

[4] The best practice is to ensure that a birth parent receives a copy of the documents releasing their parental rights expressly informing them of the 48-hour revocation option and the procedures and process by which to implement such a revocation.

dependency statute and applies to involuntary termination of the parent-child relationship for a dependent child residing within the petitioner's county. RCW 13.34.040, .180. RCW 13.34.100 governs appointment of a GAL for the benefit of the dependent child that is to be adopted, not for the benefit of the dependent minor parent. *See* RCW 13.34.100(1).

■■ Chapter 26.33 RCW is the adoption statute that governs the duties of a GAL appointed for a minor parent in a proceeding to adopt the minor parent's child. RCW 26.33.070. Under this statute, the GAL "shall make an investigation and report to the court concerning whether any written consent to adoption or petition for relinquishment signed by the parent or alleged father was signed voluntarily and with an understanding of the consequences of the action." RCW 26.33.070(1). We therefore evaluate whether the GAL here satisfied her statutory duties under RCW 26.33.070.

The record reflects that the GAL spoke with T.N. by telephone on August 8 to determine whether T.N. wanted to place the baby for adoption. During that conversation, the GAL learned that T.N., with her attorney, had already signed the documents. The GAL told T.N. that the relinquishment paperwork was not yet final[5] and asked T.N. if she was sure that she wanted to relinquish her parental rights. T.N. told the GAL that she wanted to relinquish her rights because it was best for the child. The GAL said she was cautious, but felt it was clear that T.N. intended to sign the papers. The GAL also testified that her "primary thing . . . was whether or not her action was in fact voluntary or whether she was operating under some sense of threat or misunderstanding" of her rights. Report of Proceedings (RP) at 216.

The GAL signed and filed a stipulation agreement regarding T.N.'s relinquishment. She testified that she would

---

[5] T.N. apparently signed the stipulation agreement before the GAL called her. The GAL told T.N. that it was not final and that if she had any doubts, she and the GAL should get together and revisit the relinquishment. T.N. declined her offer, and the GAL believed the relinquishment was voluntary.

not have signed the agreement had she not been convinced that T.N.'s relinquishment was voluntary.

Although the GAL did not make a formal report to the trial court, she signed a stipulation agreement that includes the statement that T.N. "understood the consequences of her act and was not acting under fraud, duress, or mistake of fact, and that the written consent was validly executed." Clerk's Papers (CP) at 12. Thus, the GAL effectively reported to the court that T.N.'s actions were voluntary, as RCW 26.33.070 required her to do. The trial court did not abuse its discretion by denying T.N.'s motion to vacate the adoption decree on the grounds that the GAL failed to perform her statutory duties.

T.N.'s Request for Revocation of Relinquishment

T.N. next argues that her statements to the GAL, like her signature on the relinquishment documents, were ineffective because she was suffering from depression and was incompetent and because her foster mother, the adoptive mother, and DSHS obtained her consent to the adoption through fraud and duress.

A biological parent's consent to adoption can be revoked only on a showing of fraud or duress by the person, department, or agency requesting consent to adoption or mental incapacity of the relinquishing parent. See RCW 26.33.160(2)(b), (4)(g). T.N. asserts that her relinquishment should be revoked due to fraud and duress by DSHS or its agents, or her mental incapacity at the time she executed the relinquishment documents. To prevail, T.N. must prove her claim by clear, cogent, and convincing evidence. Beckendorf v. Beckendorf, 76 Wn.2d 457, 462, 457 P.2d 603 (1969); In re Adoption of Hernandez, 25 Wn. App. 447, 455, 607 P.2d 879 (1980).

Mental Incapacity

T.N. contends that her postpartum depression and therapy prevented her from making a voluntary decision to relinquish. But she never provided expert testimony establishing her mental condition on August 6, 2001, the

date she signed the relinquishment document. Moreover, emotional stress alone does not vitiate an otherwise voluntary decision to relinquish parental rights. *In re Adoption of Baby Girl K*, 26 Wn. App. 897, 904, 615 P.2d 1310 (1980), *review denied*, 95 Wn.2d 1003 (1981). T.N. has not shown that her depression and therapy caused emotional stress beyond that normally existing in her difficult situation. And the record before the trial court contains no evidence that T.N. did not possess the mental capacity to relinquish custody of the child. Thus, the trial court properly denied T.N.'s request to revoke relinquishment on the grounds that she was mentally incapacitated when she signed the relinquishment documents.

FRAUD

T.N. asserts that the trial court applied the incorrect standard of fraud and that by using this standard, made it more difficult for her to demonstrate that DSHS, Ashby, and C.C. obtained relinquishment of her parental rights by fraud. The trial court outlined the fraud standard it applied as follows:

> (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; [and] (9) his consequent damage.

*Swanson v. Solomon*, 50 Wn.2d 825, 828, 314 P.2d 655 (1957).

██ ██ This is the fraud standard applied in property cases. T.N. asserts that all nine elements are not required to demonstrate fraud in an adoption context, citing *In re Adoption of Perry*, 31 Wn. App. 268, 272, 641 P.2d 178 (1982). In *Perry*, the court expressed its preference for a more general definition of fraud in adoption cases as follows:

> "Fraud . . . in its general sense, is deemed to comprise anything calculated to deceive, including all acts, omissions, and

concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another, or by which an undue and unconscientious advantage is taken of another."

*Perry*, 31 Wn. App. at 272 (quoting *Hernandez*, 25 Wn. App. at 455). The *Perry* fraud definition has been used in subsequent adoption cases and is preferred in adoption cases. *See, e.g., In re Welfare of Mary D.*, 94 Wn. App. 582, 590, 975 P.2d 1 (1999); *In re A.S.*, 65 Wn. App. 631, 634-35, 829 P.2d 791 (1992).

We also prefer the *Perry* standard of fraud in adoption cases. But, here, we do not conclude that the trial court erred when it found no evidence of fraud. Under both the *Swanson* and *Perry* standards, overreaching and undue influence, the essence of which is unfair persuasion, are species of fraud that will vitiate a transaction. *Perry*, 31 Wn. App. at 272. T.N. failed to present any statements or acts establishing overreaching, undue influence, or that were calculated to deceive her and induce her to relinquish her parental rights and sign the consent to adoption under false pretenses.

T.N. testified only that her social worker told her on three occasions that T.N. could not "offer [the baby] everything that somebody else could," that she was "too young," and that she "should just give him away for adoption because he could have a better life." RP at 145. T.N. also testified that Ashby would tell her that "if it's too hard on you, you should just give him away" and that "somebody else could . . . care for him better than you." RP at 146. T.N. also testified that C.C., the adoptive mother who cared for the baby from July 3 through July 25, and after August 6, told her that she had "been waiting 11 years to adopt" and that she "dreamed that a little dark haired baby would come to my house and we would adopt him." RP at 149-50. T.N. testified that Ashby "made [her] feel like a bad mom" by telling her that "somebody could give him something better," which led T.N. to tell Ashby that she "couldn't handle her telling me that

anymore" and that T.N. "just want[ed] to give him away." RP at 151.

But these statements do not suggest fraud of any kind under either the *Perry* or *Swanson* standard. Under either test, fraud requires that the statements and acts be clearly calculated to deceive. *See A.S.*, 65 Wn. App. at 635 (caseworker falsely told birth parents that baby may have cerebral palsy); *Perry*, 31 Wn. App. at 273 (finding fraud when the mother was isolated during the last few months of pregnancy, and where the agency advocated adoption, never told her she was free to retain her child, falsely told her that she could revoke adoption up to seven months later, and that she had to relinquish her parental rights to "repay" the agency). No fraud exists when an agency accurately tells the mother of alternatives to caring for her child or renders advice on adoption. *Hernandez*, 25 Wn. App. at 455.

However difficult they were for T.N. to hear, the statements cited by T.N. do not suggest fraud under *Swanson* or *Perry*. Where there is no error appearing, we may affirm a trial court's decision on any basis supported in the record. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989). Applying the *Perry* standard, the record contains no evidence to support a finding of fraud.

We will uphold findings of fact that are supported by substantial evidence. *In re Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). *See Mary D.*, 94 Wn. App. at 591 (applying substantial evidence test to trial court's finding that relinquishing parent failed to show fraud). Evidence is substantial if it persuades a rational, fair-minded person of the truth of the finding. *In re Marriage of Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). Here, the trial court's finding that no fraud occurred is supported by substantial evidence.

DURESS

T.N. also challenges the trial court's finding that she did not provide clear, cogent, or convincing evidence that

her foster mother, her social worker, or DSHS applied duress to force her to relinquish her parental rights. Duress has not yet been applied in a Washington adoption case. Generally, a showing of duress requires proof of a wrongful act that either compels or induces a person to enter a transaction involuntarily. *Pleuss v. City of Seattle*, 8 Wn. App. 133, 137, 504 P.2d 1191 (1972) (quoting RESTATEMENT (FIRST) OF CONTRACTS § 497 (1932)). *See also* 2 AM. JUR. 2D *Adoption* § 101 (2004).

 In support of her duress claim, T.N. reiterates the statements set out above. Essentially, she argues that the advice of these adults and statements of their belief that T.N. was too young and inexperienced to properly provide for and raise a child, together with their refusal to baby-sit while T.N. went to play with her friends, are evidence of unlawful acts that improperly compelled her to relinquish her parental rights against her will. We disagree. Substantial evidence supports the trial court's finding that T.N. did not relinquish her parental rights under duress. *See Mary D.*, 94 Wn. App. at 591.

Based upon the foregoing, we affirm the trial court's denial of T.N.'s petition to revoke relinquishment of J.N.'s adoption.

HOUGHTON and HUNT, JJ., concur.

Review denied at 154 Wn.2d 1003 (2005).