# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of
K.L.P.,

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

           Respondent,

    v.

ANTHONY PANARELLO,

           Appellant.

No. 72554-8-I
(consolidated with No.
73156-4-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 28, 2015

APPELWICK, J. — Panarello relinquished his parental rights and consented to K.L.P.'s adoption. After the Department determined K.L.P.'s adoptive placement, Panarello contended that his consent was involuntary. The trial court denied his motion to revoke his relinquishment and vacate the order terminating his rights. We affirm.

## FACTS

K.L.P. is three years old and has been a dependent child of the state for nearly her entire life. The Department of Social and Health Services (Department) provided services to K.L.P.'s parents to improve their parenting ability. After the Department found these services to be unsuccessful, it filed a petition to terminate their parental rights on April 11, 2013. K.L.P.'s mother's parental rights were terminated on July 9, 2013. Anthony Panarello, K.L.P.'s father, objected to the petition.

On June 20, 2014, shortly before the trial date, Panarello voluntarily signed a relinquishment of custody and consent to termination/adoption and waiver of notice (Consent). Four days later, the parties presented the Consent to the trial court. Panarello appeared by telephone. After questioning Panarello and his attorney regarding the

voluntariness of the Consent, the court entered an order terminating Panarello's parental rights.

At the time Panarello relinquished his parental rights, the Department had not yet determined K.L.P.'s adoptive placement. It was considering both Panarello's sister, Gina Searle, and K.L.P.'s foster parents as potential adoptive placements. A selection committee later concluded that it would be in K.L.P.'s best interest to be adopted by her foster parents, rather than Searle. The Department notified Searle of this decision on August 5, 2014.

Panarello filed an untimely appeal to the order terminating his parental rights. He also filed a motion to revoke the Consent and vacate the trial court's order terminating his parental rights. The court denied Panarello's motion on February 3, 2015. Panarello appeals.

## DISCUSSION

Panarello argues that the trial court erred in denying his CR 60(b) motion to revoke the Consent and vacate the order terminating his parental rights. He contends that he relinquished his parental rights in reliance on fraudulent statements by the Department and an erroneous statement by the trial court. Panarello also challenges several of the trial court's findings of fact. He contests the finding that, as a matter of fact, Panarello did not rely on its misstatement of law in deciding to relinquish his parental rights. He also challenges the finding that Panarello's attorney stated Panarello had decided to relinquish "with full understanding of its legal effect." Panarello also disputes the finding that the court's own error was harmless.

Additionally, Panarello has moved to extend the period of time in which to file an appeal to the original order terminating his parental rights.[1]

I. Fraud

Panarello first argues that the trial court erred in denying his CR 60(b)(4) motion to revoke the Consent due to fraud. CR 60(b)(4) permits a court to vacate an order for fraud, misrepresentation, or misconduct of an adverse party. We review a trial court's denial of a CR 60 motion to vacate a relinquishment of parental rights for an abuse of discretion. In re the Welfare of J.N., 123 Wn. App. 564, 570, 95 P.3d 414 (2004). A trial court abuses its discretion when it makes a decision that is manifestly unreasonable or based on untenable grounds. Mitchell v. Wash. State Inst. of Pub. Policy, 153 Wn. App. 803, 821, 225 P.3d 280 (2009).

Panarello contends that his relinquishment of parental rights was secured by fraud or misconduct, because the Department represented that his sister would be K.L.P.'s adoptive placement. He argues that he agreed to relinquish his parental rights based on this misrepresentation. Additionally, he claims that the Department deceived him by not disclosing its adoption placement procedures.

---

[1] Panarello raises several issues on appeal regarding that original order. He claims the trial court erred in concluding that his relinquishment of parental rights was voluntary. He also challenges the trial court's finding of fact that terminating Panarello's parental rights was in the best interests of the child. Because we ultimately deny his motion to extend time, we do not review the merits of these issues.

In the context of vacating a party's relinquishment and consent to adoption, fraud has a broad meaning. See In re Infant Child Perry, 31 Wn. App. 268, 272, 641 P.2d 178 (1982). For these purposes, fraud is

> anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust or confidence, justly reposed, resulting in damage to another, or by which an undue or unconscientious advantage is taken of another.

In re Adoption of Hernandez, 25 Wn. App. 447, 455, 607 P.2d 879 (1980). To succeed on a CR 60(b)(4) motion, a party must prove the claim of fraud by clear, cogent, and convincing evidence. J.N., 123 Wn. App. at 573. The trial court concluded that there was not clear, cogent, and convincing evidence that the Department committed fraud or attempted to deceive Panarello

The record shows that Panarello firmly believed that his sister would be considered as a possible adoptive placement. He expressed this hope to his attorney when signing the Consent. He emphasized it to the court during the termination hearing, agreeing that relinquishing his parental rights was in the best interest of the child, so long as Searle would be considered.

But, while Panarello fervently hoped Searle would be K.L.P.'s adoptive placement, he also recognized that once he relinquished his parental rights, the decision was in the Department's hands. Panarello signed the Consent, which clearly stated that the Department would have full authority to place K.L.P. with her adoptive parents and that Panarello would have no right to notice of adoption proceedings nor a right to contest those proceedings. At the hearing, Panarello's attorney assured the court, "He understands that the Department is not required to place the child with his sister and that

is I think the thing that made it most difficult for him to go forward, but I think he is satisfied that every good faith effort will be made." Panarello confirmed that this was a correct statement of his views.

Despite the evidence in the record, Panarello asserts that the Department's misrepresentations are analogous to those found to be fraud in In re A.S., 65 Wn. App. 631, 829 P.2d 791 (1992). In that case, a nurse noticed A.S. walking on her tiptoes, which could indicate cerebral palsy. Id. at 633. She told the caseworker that A.S. should be reevaluated in several months to rule out cerebral palsy. Id. The caseworker, however, told A.S.'s parents that there was a strong possibility that their daughter had cerebral palsy. Id. The parents understood this statement to mean that their daughter had cerebral palsy, and the caseworker did not correct them. Id. at 633-34. Because they could not afford to care for A.S.'s cerebral palsy, Mr. and Mrs. S. decided to relinquish their parental rights. Id. The court held the caseworker's deception to be clear, cogent, and convincing evidence of fraud. Id. at 635-36.

But, this case is distinguishable from A.S. Despite Panarello's claims, no one guaranteed him that Searle would be K.L.P.'s adoptive placement. Panarello asserts that his attorney relayed a message from Assistant Attorney General Sara Kooistra. He claims that Kooistra told his attorney that so long as Searle traveled to Washington to visit K.L.P. and their visit went well, the Department would place K.L.P. with Searle. Yet, Panarello did not have personal knowledge of this conversation. Kooistra's sworn declaration, though, asserts that she never guaranteed placement with Searle. Rather, she indicated that it would be beneficial for Searle to visit with K.L.P., and the Department

5

would consider these visits when making its decision. This evidence does not resemble the indisputable facts presented in A.S.

Panarello now also contends that the Department should have informed him about the procedures through which it would make an adoption decision. He argues his decision would have been different had he known the adoption committee was anonymous. Yet there is no evidence in the record that Panarello asked how the Department would make its decision. Nor is there evidence that the Department represented to him that K.L.P.'s social worker would decide. And, nothing in the record indicates that Panarello expressed to his attorney or the trial court that his decision was based on a belief that K.L.P.'s social worker would make the decision regarding adoptive placement. The Department's failure to disclose information it was not asked to provide or legally obligated to reveal does not constitute clear, cogent, and convincing evidence of fraud.

There is not clear, cogent, and convincing evidence that the Department guaranteed K.L.P.'s adoptive placement or deceived Panarello in any way. Therefore, the trial court did not abuse its discretion when it denied Panarello's CR 60(b)(4) motion.

## II. Mistake, Irregularity, or Any Other Reason Justifying Relief

Panarello also maintains that the trial court erred in denying his CR 60(b)(1) and CR 60(b)(11) motions to revoke the consent due to mistake or other reason. He argues that the trial court made an erroneous statement of law that perpetuated his mistaken belief that K.L.P. would be placed with his sister. He construes this misstatement as either a mistake or, alternatively, an extraordinary reason to revoke the Consent and vacate the order terminating his parental rights.

A court may order relief from judgment under CR 60(b)(1) because of "[m]istake, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(11) permits relief from judgment for "[a]ny other reason justifying relief from the operation of the judgment."

The trial court incorrectly stated the law. During the hearing to execute the Consent, the court stated, "[T]he Department will be guided by the law, which gives some priority as I understand it to biological family members, but ultimately the decision is the Department's." This statement, as the court later recognized, is not accurate. When the Department has filed a termination petition, it is required to consider the parent's preferred adoptive placement. RCW 13.34.125. However, it need not prioritize biological family members.

In its order denying Panarello's motion to revoke the Consent, the trial court recognized that it misstated the law. But, it found as a matter of fact that its incorrect statement did not affect Panarello's decision to relinquish his parental rights. The trial court based this finding on five discrete factual findings. The court found that Panarello made the decision four days before the hearing, his attorney submitted the Consent before the court's misstatement of law, the court confirmed that Panarello was not basing his decision on a guarantee regarding K.L.P.'s adoption placement, Panarello's attorney stated that Panarello made his decision with full understanding of its legal effect, and Panarello was present and confirmed that his attorney's statements were accurate. The trial court also found that its error was harmless. Panarello challenges three of these findings: that the misstatement of law did not affect Panarello's decision, that Panarello's

attorney stated he made the decision with full understanding of its legal effect, and that the trial court's error was harmless.[2]

We uphold findings of fact that are supported by substantial evidence. Welfare of J.N., 123 Wn. App. at 576. Evidence is substantial when a rational, fair-minded person would be persuaded that the finding is true. Id. We review conclusions of law de novo. Robel v. Roundup Corp., 148 Wn.2d 35, 42-43, 59 P.3d 611 (2002). We do so even if they are erroneously labeled as findings of fact. Id. at 43.

Substantial evidence in the record supports the court's finding that Panarello did not rely on the court's misstatement of law.[3] Panarello came before the court having already signed the Consent on June 20, 2014. He had decided that relinquishing his parental rights was in the best interests of his child. He had acknowledged that all future decisions regarding K.L.P.'s adoptive placement would be made by the Department. Four days later, Panarello was present by telephone at the hearing on the issue. The parties presented the signed Consent to the court and announced Panarello's considered decision to relinquish his parental rights. All of this occurred before the court misstated the law.

---

[2] Specifically, Panarello objects to findings of fact 7, 7d, and 9. Panarello further asserts that findings of fact 7 and 9 should be construed as conclusions of law

[3] Panarello alleges that finding of fact 7 should be construed as a conclusion of law because it affects the ultimate issue in this case. But, whether Panarello relied upon the trial court's erroneous statement of law is a factual question that can be answered by looking at the context of the statement. Therefore, the trial court did not erroneously label this as a finding of fact. We review for substantial evidence. Welfare of J.N., 123 Wn. App. at 576.

During the hearing, the court questioned Panarello and his attorney to ensure Panarello had made this decision voluntarily. The misstatement of law was included in such a question:

> Did you talk with your client . . . about the fact that if parental rights are terminated that the welfare of the child will be in the hands of [the Department] and of course the Department will be guided by the law, which gives some priority as I understand it to biological family members, but ultimately the decision is the Department's and so Mr. Panarello should know that his relinquishment is not conditioned on any commitment by the Department or the Court as to what the placement of [K.L.P.] should be?

Thus, the court also stressed that neither it nor the Department was guaranteeing K.L.P.'s adoptive placement. Panarello's attorney responded that he had spoken at length to Panarello about this issue, and though it was difficult for Panarello to accept, he understood it. Panarello confirmed that this was an accurate representation of his views. As such, the trial court's erroneous statement did not affect Panarello's decision to relinquish his parental rights.

Substantial evidence also supports the court's finding that Panarello's attorney clearly stated that Panarello made his decision to relinquish with full understanding of the consequences. Panarello's attorney assured the court, "Mr. Panarello knows what he's doing . . . he has reluctantly decided that this is the best thing that can happen." He also acknowledged that Panarello knew that the Department was not require to place K.L.P. with her aunt. Additionally, when the court asked Panarello directly if his attorney had accurately stated his views on the matter, Panarello replied, "Yes." Panarello had also read the Consent and signed it four days earlier. That document explicitly stated, "I have read or have had read to me the foregoing and I hereby understand the same. The foregoing consent has been given freely, voluntarily, and with full knowledge of the

consequences." Therefore, substantial evidence supports the trial court's finding that Panarello knew the full legal effect of his actions when he decided to relinquish his parental rights.

Panarello challenges the trial court's "finding" that its own erroneous statement of law was harmless.[4] But, the unchallenged factual findings support the trial court's denial of Panarello's Cr 60(b)(1) motion. The court found that Panarello signed the Consent four days before the hearing. It found that the Consent was submitted before the court misstated the law. It found that the court explicitly asked if Panarello's relinquishment was conditioned on a belief about K.L.P.'s adoptive placement, and Panarello's attorney stated that he had discussed that with Panarello at length. Finally, the court found that Panarello was present at the hearing, did not object, and confirmed that his attorney accurately stated his views. These unchallenged findings would support the conclusion that the misstatement was harmless. In light of this evidence, we conclude that the trial court did not abuse its discretion denying Panarello's CR 60(b)(1) motion due to mistake.

Panarello argues, alternatively, that this misstatement of law justifies relief under CR 60(b)(11). He points to In re Adoption of Henderson, where the court remanded for a hearing on a motion to vacate due to a mistake in the decree. 97 Wn.2d 356, 360, 644 P.2d 1178 (1982). There, a provision that misstated the father's rights was accidentally

---

[4] Panarello asserts that finding of fact 9, concluding that the court's erroneous statement of law was harmless, is properly understood as a conclusion of law. We agree. Whether the statement was harmless is a legal conclusion based on the factual findings. See Mid-Town Ltd. P'ship v. Preston, 69 Wn. App. 227, 232, 848 P.2d 1268 (1993) ("Where the issue is what inference shall be drawn from facts where the evidence thereon is not in serious dispute, it is reviewed on appeal as a conclusion of law."). When a conclusion of law is erroneously labeled as a finding of fact, we review it as a conclusion of law, and subject it to de novo review. Robel, 148 Wn.2d at 43.

10

included in the decree. Id. at 359-60. The adoptive father, his attorney, and the court commissioner all mistakenly believed that the provision was an accurate statement of the adoptive father's rights. Id. The court found that these unusual circumstances merited a hearing under CR 60(b)(11). Id. at 360.

But Panarello has not indicated any similar mutual mistake here. Panarello's mistaken assumptions about K.L.P.'s adoptive placement were not shared by anyone else. Instead, the trial court notified Panarello that the ultimate decision was up to the Department. Panarello's attorney acknowledged this as well. Without more, Panarello's mistaken beliefs do not constitute extraordinary circumstances sufficient to vacate the Consent under CR 60(b)(11).

We hold that the trial court did not abuse its discretion in denying Panarello's CR 60(b)(1) or CR 60(b)(11) motions due to the trial court's erroneous statement of law.

III. Motion to Enlarge Time to File Appeal

Panarello also moves for an extention of time to file a notice of appeal of the original order terminating his parental rights. Panarello concedes that his appeal of the order terminating his parental rights was not timely filed. Even so, he argues that he did not voluntarily waive his right to appeal. He contends that his prior attorney's failure to communicate information should not deprive him of his right to appeal. He further asserts that he filed a notice of appeal as soon as he learned of K.L.P.'s adoptive placement.

RAP 5.2 dictates that an appellant must file a notice of appeal within thirty days after the trial court order is entered. We will extend that time period only "in extraordinary circumstances and to prevent a gross miscarriage of justice." RAP 18.8. We have very

rarely found this test satisfied. <u>Reichelt v. Raymark Indus., Inc.</u>, 52 Wn. App. 763, 765, 764 P.2d 653 (1988).

Assuming his bare allegation that his attorney failed to communicate to him his right of appeal, Panarello has failed to indicate extraordinary circumstances here. His attorney's failure to communicate information about K.L.P.'s adoptive placement is not an extraordinary circumstance. <u>See</u> <u>Reichelt</u>, 52 Wn. App. at 766 (holding that attorneys' mistake was not extraordinary grounds). Additionally, it is not sufficient that Panarello filed a notice of appeal as soon as he learned of K.L.P.'s adoptive placement. He specifically disclaimed his right to contest and to receive notice of K.L.P.'s adoption by relinquishing his parental rights. The fact that he did not learn of K.L.P.'s adoptive placement until after the time to file had expired is not an extraordinary circumstance.

Here, the goal of finality outweighs Panarello's desire to extend the time to file an appeal. <u>See</u> <u>In re Adoption of Baby Girl K.</u>, 26 Wn. App. 897, 906, 615 P.2d 1310 (1980). We deny Panarello's motion to extend time to file its notice of appeal.[5]

We affirm.

_Appelwick, J._

WE CONCUR:

_____

_Cox, J._

_____

---

[5] Panarello's brief raises several issues concerning the original order terminating his parental rights. Because we deny his motion to extend time to file notice of an appeal, we do not reach these issues.