*In the Matter of the Adoption of*
BABY NANCY.

*Halverson, Strong, Moen & Chemnick* and *Eugene M. Moen,* for appellant.

*Daniel Hoyt Smith,* for respondent.

DURHAM–DIVELBISS, J.—This is an action to vacate an interlocutory decree of adoption.

Nancy was born on October 6, 1975, to George and Gloria. George and his father, David, provided for most of her care, particularly after Gloria's death in July 1977. Nancy, who suffered from language and learning disabilities, was treated at the University of Washington's Child Development and Mental Retardation Center. In January 1978, Nancy was taken to the International Child Care Center, where Bonnie was employed. After about 3 months, Bonnie began taking the child home with her for overnight visits and by June 1978, she undertook virtually full–time care.

At that time David believed it would best serve Nancy's interests for her to be adopted by Bonnie. In August of 1978, a petition for adoption was prepared for Bonnie by an attorney retained by David, but George refused to sign the "consent to adoption." However, under pressure from his father, he ultimately agreed. On November 15, 1978, he signed a consent to adoption and waiver of notice which stated that he understood that the effect of an adoption was to terminate all parental rights and that the consent could not be revoked except in the case of fraud of the adoptive parent or mental incompetency of the consenting parent.

The petition for adoption was filed November 28, 1978, and on November 30, 1978, an order authorizing relinquishment of custody and approving the consent to adoption was signed by the court. At the same time an order appointing the King County Adoption Service as next friend was also signed.

On May 4, 1979, the final hearing was held and an interlocutory decree of adoption was entered. Pursuant to the

waiver he had signed, George was given no notice of this hearing. On October 26, 1979, David and George had changed their minds regarding the adoption and filed a petition to vacate the decree. After trial to the court, findings of fact, conclusions of law, and an order vacating the decree of adoption were entered. By virtue of a commissioner's ruling granting a stay pending appeal, the child has remained with the adoptive mother. Bonnie appeals.

She first assigns error to the trial court's conclusion that the order of relinquishment and approval of consent entered November 30, 1978, was invalid because it was not based on the written approval by the next friend appointed at that time.

RCW 26.32.070(3) provided:

The court, prior to signing an order of relinquishment, may appoint a next friend, as hereinafter provided in RCW 26.32.090, who shall report to the court either orally or in writing as to the competency of the parent signing the consent, whether or not such consent is voluntary, and whether or not at that time anything affirmatively appears that the best interests of the child would not be served by the adoption. The order of relinquishment shall not be signed without the written approval of the next friend and without the court calling a hearing as to the advisability of the relinquishment, whenever the court appoints a next friend.

This statute must be read together with RCW 26.32.090 which provides in part:

Upon the filing of a petition for adoption, the court shall cause an investigation of the propriety of the adoption to be made. The court shall appoint . . . [a] next friend . . . to make such investigation.

The appointment of a next friend upon the filing of a petition for adoption is clearly mandatory. RCW 26.32.090. However, appointment of a next friend prior to signing of an order of relinquishment is discretionary. *In re Adoption of Hernandez,* 25 Wn. App. 447, 607 P.2d 879 (1980). Written approval of the next friend is not required in every

case, but only "whenever the court appoints a next friend" pursuant to RCW 26.32.070(3).

The order appointing a next friend recited that a petition for adoption had been filed. It ordered that

King County Adoption Service be and hereby is appointed as next friend of the child to make a complete investigation and report relative to the proposed adoption.

The order did not mention either the consent or the relinquishment. The language of this order together with the fact that it was signed contemporaneously with the order authorizing relinquishment, requires us to conclude that the trial court was complying with RCW 26.32.090. Had the court been exercising its discretion pursuant to RCW 26.32.070(3), it would not have signed the relinquishment order. Thus, the trial court's findings on this ground are without basis.

Bonnie next assigns error to the trial court's conclusion that because George had indicated a possible desire to withdraw his consent, he was entitled to notice of the May 4, 1979, final adoption hearing.

■ RCW 26.32.080 (repealed effective 1979) provided in part:

(1) The court shall direct notice of any hearing under RCW 26.32.050 to be given to any nonconsenting parent or guardian, if any, and to any person or association having the actual care, custody, or control of the child: . . .

George, as a consenting parent, was not entitled to notice under this provision. *In re Adoption of Jackson*, 89 Wn.2d 945, 578 P.2d 33 (1978). Moreover, he had expressly waived notice in his consent to adoption. We can find no support for the trial court's conclusion that a consenting parent's vacillation, subsequent to signing a consent to adoption, entitles him to notice.

Bonnie next assigns error to the trial court's conclusion that the Indian Child Welfare Act of 1978 (25 U.S.C.A. §§ 1901 *et seq.* (Supp. 1979)), which established minimum federal standards for the removal of Indian children from

their families, applied to this action. We agree with Bonnie that it did not apply insofar as the finality of the adoption was concerned. Congress anticipated such problems and provided that the Indian Child Welfare Act of 1978 does not apply to adoptive placement "initiated or completed prior to one hundred and eighty days after November 8, 1978, but shall apply to any subsequent proceeding in the same matter . . ." 25 U.S.C.A. § 1923 (Supp. 1979).

The final adoption hearing here was held within the 180–day period. We do not agree that the action to vacate the adoption was a "subsequent proceeding" and that therefore, the Indian Child Welfare Act of 1978 applied.

■ Congress could not have intended any adoption of an Indian child, no matter when completed, to be upset by a subsequent action to vacate. Otherwise 25 U.S.C.A. § 1923 (Supp. 1979) would be meaningless. For example, 25 U.S.C.A. § 1913 (Supp. 1979) requires a valid consent to termination of parental rights to be "accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent . . ." Obviously this was not done here and likely would not have been done in any proceeding initiated prior to the act. 25 U.S.C.A. § 1914 (Supp. 1979) allows a termination of parental rights to be invalidated upon a showing that 25 U.S.C.A. § 1913 (Supp. 1979) was violated. If 25 U.S.C.A. § 1914 (Supp. 1979) applied to this case, all adoptions of Indian children could be upset even though they had been final for years. This could not have been the intent of Congress.

Finally, Bonnie assigns error to the trial court's conclusion that the consent to adopt was invalid because it was not voluntary and complete. With regard to the validity of the consent the court entered the following findings of fact and conclusion of law.

The original document purporting to be a consent to adoption executed by George on November 15, 1978, was in fact, and was understood by the . . . and case worker

to be, the conditional consent, predicated on an agreement between George and Bonnie that, as Bonnie had assured him before the consent was signed, George would maintain permanent visitation rights with his daughter, and that she would grow up knowing him as her father, and David as her grandfather. The consent was therefore not totally voluntary, complete, and unconditional, as required by law.

(Surnames omitted.) Finding of fact No. 5.

The concept of "adoption" is different in Indian culture from the concept in Anglo–American law, in that in Indian culture adoption is not necessarily accompanied by a total abandonment of the parent–child relationship by the natural parent. This contribution to George['s] willingness to agree to an "adoption" to give his daughter Nancy, whom he loved, a good home, without the legally necessary agreement to total relinquishment of parental rights required to have a consensual adoption under our law.

(Surname omitted.) Finding of fact No. 6.

A consideration of all of the facts and circumstances of this case, based on the court's evaluation of all the evidence and the testimony of the witnesses requires the trial court to conclude that clear and convincing evidence establishes that the consent here was not a voluntary, unequivocal, or unconditional relinquishment of parental rights, and therefore was an insufficient legal basis to support a Decree of Adoption.

Conclusion of law No. 5.

The primary interest of the public is to preserve the integrity of the adoptive process. *In re Sage,* 21 Wn. App. 803, 586 P.2d 1201 (1978). Adoption is a humane solution to the problem of unwanted or neglected children and the public has an interest in maintaining a system that promotes the supply of capable parents to adopt without affecting the willingness of biological parents to make decisions in the best interest of their children. *In re Sage, supra* at 807.

To promote these ends, the legislature has adopted a system of relinquishment and consent to adopt so that once

the consent is approved and the order of relinquishment entered "it is not revocable except for fraud practiced by the petitioners or mental incompetency of the person signing the consent." *In re Adoption of Jackson, supra* at 949; RCW 26.32.070. Bonds between the child and prospective adoptive parents are formed quickly. "The early confirmation of the consent and relinquishment removes a major uncertainty." *In re Adoption of Jackson, supra* at 950. A procedure allowing the consent to be too easily set aside reinstates that uncertainty. This uncertainty—the possibility of losing a loved child after emotional ties have formed—affects the public interest by discouraging potential adoptive parents.

In this case, the trial court made no finding of fraud or mental incompetency. Rather, the trial court found the consent was "not totally voluntary, complete, and unconditional, as required by law." The court held that George's understanding that he would be able to continue to visit Nancy made the consent incomplete and therefore of no effect.

A similar issue was recently faced by this court in *In re Adoption of Baby Girl K,* 26 Wn. App. 897, 615 P.2d 1310 (1980). There the question was the validity of a written surrender to an adoption agency rather than a consent to adopt. The trial court found that the surrender was not voluntary because the mother was uncertain and indecisive and did not fully understand the legal effect of the surrender. We held:

> None of these findings supports a conclusion that the mother acted without volition. We hold that a lack of full understanding of the consequences, coupled with inexperience, emotional stress, uncertainty and indecisiveness are insufficient findings to allow repudiation of the surrender.

*In re Adoption of Baby Girl K, supra* at 904.

George signed the consent form of his own free will. Absent fraud or mental incompetency, he was deemed by

law to understand its contents. *In re Adoption of Baby Girl K, supra.* As we stated:

> If the trial court's ruling were upheld, countless adoptions would be jeopardized, and the strong public interest in the integrity of the adoptive process would be undermined. *See In re Sage, supra.*

*In re Adoption of Baby Girl K, supra* at 905.

In the present case the trial court relied on George's cultural background and certain discussions regarding visitation to conclude that the consent was not voluntary. The trial court made no finding of mental incompetency, fraud or other overreaching and we can find no evidence that would support such findings. The consent which George signed stated that he understood that

> the nature and effect of a Decree of Absolute Adoption is to extinguish and terminate all rights, duties, obligations and liabilities of the natural parent or parents of the adopted child in relation to the custody, maintenance and education of the child thereafter; and also to deprive the natural parent permanently of their parental rights in respect to the adopted child.

Jean Norman of King County Adoption Services testified that, in fact, George had read the consent form and she had explained it to him.

There being insufficient basis in the findings and the record to repudiate that consent, the vacation of the decree of adoption is reversed.

JAMES, A.C.J., and ANDERSEN, J., concur.

Reconsideration denied October 21, 1980.

Review denied by Supreme Court January 19, 1981.