IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: | ) ) ) | No. 32169-0-III |
| INFANT G.-C., | ) ) | |
| Minor Child. | ) ) | |
| | ) | UNPUBLISHED OPINION |

BROWN, A.C.J. — Adam Herrera appeals the trial court's decision approving his signed consent to terminate his parental rights and for Lisa and Luis Rodriguez to adopt G.-C. Because Mr. Herrera wrote "under duress" next to his signature, he mainly contends the court lacked subject matter jurisdiction to terminate his parental rights. Additionally, he contends the court erred by failing to make written findings of fact concerning his consent and in approving his consent when he failed to appear at the termination hearing after due notice. We affirm.

FACTS

Before G.-C.'s birth, her unmarried, biological parents decided to place her for adoption. The mother signed a consent to adopt and termination of parental rights on July 26, 2013. G.-C. was born on July 29, 2013 and placed with the Rodriguezes, who petitioned for adoption. Mr. Herrera, pro se, initially answered the petition, objecting.

Mr. Herrera was given due notice of the December 9, 2013 hearing date. The Rodriguezes continued contacting Mr. Herrera, updating him on G.C.'s progress, travelling several hundred miles to allow Mr. Herrera to see the baby, and ultimately entering into an open adoption agreement on December 6, 2013 filed with the court before the adoption hearing along with his consent and declaration of the same date.

In Mr. Herrera's December 6, 2013 signed consent to adopt and terminate parental rights, he wrote "signed under duress" next to his signature. Clerk's Papers (CP) at 29. The accompanying declaration expressed his reasoning and concerns about the biological mother's abilities to parent and his emotional struggles with the adoption. He partly stated, "This is about the safety, wellbeing and the future of my child that I feel the State of Washington will not protect her against in custody litigation against the mother." CP at 33. Mr. Herrera, acknowledged the logic of his consent while expressing the emotional pressure he felt in doing what he felt best for G.-C. He ended his declaration, "I ultimately want what is best for my child." Id.

Mr. Herrera failed to appear at the December 9, 2013 termination hearing. The court received and approved the adoption agreement and Mr. Herrera's now-disputed consent. Although Mr. Herrera did not appear, the court, nevertheless, questioned Ms. Rodriguez about Mr. Herrera's duress statement, asking "did you in any way threaten or pressure Mr. Herrera into agreeing to this adoption?" Report of Proceedings (RP) at 13. She replied, "No, we did not." RP at 13. The court stated, "I read Mr. Herrera's declaration and it appears to me that where he says he felt pressure, the pressure is

2

actually coming from the fear that the child would be in the custody of the mother . . . not because of anything that the Rodriguezes did. But rather he felt pressure to do this because in fact it's actually better for the child than leaving the child with the birth mother." RP at 13-14. The Rodriguezes' attorney, who witnessed the signing, agreed this was the case. The court then found, "I am specifically finding and specifically approving the consent filed by the father." RP at 14.

The court then terminated the parental rights of both biological parents. The court's findings of fact and conclusions of law do not expressly address the "under duress" statement. But in the terminating order, the court stated, "the consent to adoption of the birth father is approved." CP at 50. Mr. Herrera appealed.

## ANALYSIS

### A. Subject Matter Jurisdiction

Mr. Herrera initially contends the court lacked subject matter jurisdiction to decide any issues related to adoption because Mr. Herrera's consent to terminate his parental rights was not filed simultaneously with the Rodriguezes' adoption petition.

Superior courts in Washington State have subject matter jurisdiction over all types of cases unless jurisdiction is vested exclusively in another court. WASH. CONST. art. IV, § 6. A final order is void if the court lacked subject matter jurisdiction. *In re Marriage of Buecking*, 179 Wn.2d 438, 446, 316 P.3d 999 (2013), *cert. denied*, 135 S. Ct. 181, 190 L. Ed. 2d 129 (2014 ). Whether subject matter jurisdiction exists is a legal question, which this court reviews de novo. *Id.* at 443.

3

Chapter 26.33 RCW governs adoption petitions. "An adoption proceeding is initiated by filing with the court a petition for adoption." RCW 26.33.150(1). Under RCW 26.33.150(3), a "written consent to adoption of any person, the department, or agency which has been executed shall be filed with the petition." Relying upon this statute, Mr. Herrera unpersuasively argues a court has subject matter jurisdiction solely if the written consent and petition are filed together.

RCW 26.33.030(1) requires adoption petitions to be "filed in the superior court of the county in which the petitioner is a resident or of the county in which the adoptee is domiciled." Adoption petition hearings must be held in superior court. RCW 26.33.060. No provision in chapter 26.33 RCW limits jurisdiction to when the petition and written consent are simultaneously filed. RCW 26.33.150(3) requires any "executed" consents be filed with the petition for adoption. This statute is not jurisdictional.

## B. Findings Sufficiency

The issue is whether the trial court's findings of fact are sufficient to terminate Mr. Herrera's parental rights. He contends the court made no finding regarding his consent; thus, the order terminating his rights must be reversed. While this issue was not raised below, we choose to address it to dispel Mr. Herrera's concerns.

Specific findings are required before terminating a parent-child relationship. *See In re Dependency of C.B.*, 61 Wn. App. 280, 287, 810 P.2d 518 (1991) (sufficiently specific findings of fact required to terminate parental rights under RCW 13.34.180). Where a court must enter required findings, those findings "must be sufficiently specific

4

to permit meaningful review." *In re Det. of LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). When written findings are unclear, we may look to the trial court's oral ruling to help interpret the implicit findings. *In re Marriage of Kimpel*, 122 Wn. App. 729, 735, 94 P.3d 1022 (2004).

The court's written findings mention G.-C.'s birthdate, who she resides with, and that the birth mother had consented to adoption. The court's oral ruling additionally provides, "I read Mr. Herrera's declaration and it appears to me that where he says he felt pressure, the pressure is actually coming from the fear that the child would be in the custody of the mother . . . not because of anything that the Rodriguezes did. But rather he felt pressure to do this because in fact it's actually better for the child than leaving the child with the birth mother." RP at 13-14. The court then found, "I am specifically finding and specifically approving the consent filed by the father." RP at 14. And, in its order terminating the parent-child relationship, the court stated, "the consent to adoption of the birth father is approved." CP at 50. As mentioned, the purpose of findings is to permit meaningful review. The merits of this case involve the validity of Mr. Herrera's consent and the court's subsequent termination of his parental rights. The above oral and written findings are sufficient to permit meaningful review.

## C. Validity of Consent

The issue is whether the court erred in approving Mr. Herrera's consent and terminating his parental rights. He contends the court should have rejected his consent because it was given was given under duress.

5

We review an order terminating parental rights to determine if substantial evidence supports the trial court's findings in light of the degree of proof required. *In re Welfare of S.V.B.*, 75 Wn. App. 762, 768, 880 P.2d 80 (1994). Substantial evidence is "'evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991) (quoting *Bering v. Share*, 106 Wn.2d 212, 220, 712 P.2d 918 (1986)). We do not reweigh the evidence or pass on credibility. *In re Welfare of C.B.*, 134 Wn. App. 942, 953, 143 P.3d 846 (2006). We accord great deference to the trial court's decision to terminate. *C.B.*, 134 Wn. App. at 952.

Initially, Mr. Herrera alleges his consent to adopt form is defective because it does not meet the requirements of RCW 26.33.160(4)(i), which requires consent forms to state, "I understand that my decision to relinquish the child is an extremely important one, that the legal effect of this relinquishment will be to take from me all legal rights and obligations with respect to the child, and that an order permanently terminating all of my parental rights to the child will be entered." The form signed by Mr. Herrera states, "I understand that the legal effect of this Consent and Relinquishment will be to take from me all legal rights and obligations with respect to the child, except for past due support obligations with respect to this child." CP at 27. While the wording is not identical, the paragraphs' purpose is the same: to show the biological parent understands the legal effect of signing the consent to adopt form. RCW 26.33.160(4) states that the consent form "shall" contain certain language, but requiring such strict

6

compliance that a substitute word or out of order phrase would render the entire consent form invalid goes against the legislature's intent to provide finality for adoptive placements. RCW 26.33.260(4). Thus, Mr. Herrera's technical argument is without merit.

When parties file a petition to adopt and the birth parents sign a consent to adopt and relinquishment of parental rights, a three-step adoption process follows. First, the court must approve the birth parents' consent, then the court terminates the parent-child relationship, and lastly, the court grants the petition to adopt. *See* chapter 26.33 RCW. The first question then relates to the validity of the consent.

"A consent to adoption may not be revoked after it has been approved by the court." RCW 26.33.160(3). However, "a consent may be revoked for fraud or duress practiced by the person, department, or agency requesting the consent, or for lack of mental competency on the part of the person giving the consent at the time the consent was given." *Id.* Here, Mr. Herrera uniquely consented and contradictorily indicated alongside his signature "signed under duress," giving a lengthy explanation. CP at 29.

Division One of this court faced a similar problem in *In re Adoption of Baby Girl K*, 26 Wn. App. 897, 615 P.2d 1310 (1980). There, the question was the validity of a written surrender to an adoption agency rather than a consent to adopt. The trial court found the surrender was not voluntary because the mother was uncertain and indecisive and did not fully understand the legal effect of the surrender. The court held, "None of these findings supports a conclusion that the mother acted without volition. We hold

7

that a lack of full understanding of the consequences, coupled with inexperience, emotional stress, uncertainty and indecisiveness are insufficient findings to allow repudiation of the surrender." *Id.* at 904.

The same year, Division One decided *In the Matter of Adoption of Baby Nancy*, 27 Wn. App. 278, 616 P.2d 1263 (1980). There, the father sought to relinquish his consent one year after signing, but before the petition for adoption was granted. The trial court vacated the consent, but Division One reversed, holding there was "no finding of mental incompetency, fraud or other overreaching and we can find no evidence that would support such findings." *Id.* at 284. The court noted, "A procedure allowing the consent to be too easily set aside reinstates that uncertainty. This uncertainty–the possibility of losing a loved child after emotional ties have formed–affects the public interest by discouraging potential adoptive parents." *Id.* The court concluded, "There being insufficient basis in the findings and the record to repudiate that consent, the vacation of the decree of adoption is reversed." *Id.* at 285.

Mr. Herrera initially agreed with the birth mother to adoption before G.-C. was born. The record shows friction between the birth mother and Mr. Herrera, resulting in Mr. Herrera's intermittent indecisiveness about adoption. After the Rodriguezes reached an agreement for an open adoption, Mr. Herrera formally consented with his explanation that he worried over the birth mother's involvement and the State's inability to protect the child. After questioning Ms. Rodriguez and talking with counsel, the court found, "It appears to me that where he says he felt pressure, the pressure is actually

8

coming from the fear that the child would be in the custody of the mother . . . not because of anything that the Rodriguezes did." RP at 13-14. The record does not show any mental incompetency, fraud, or overreaching. Mr. Herrera's consent is consistent; after explaining his emotional struggles in reaching his consent decision, he summed up: "I ultimately want what is best for my child." While the record shows Mr. Herrera was indecisive at times, this is insufficient to invalidate his consent under *In re Adoption of Baby Girl K* and *In the Matter of Adoption of Baby Nancy.* Thus, substantial evidence supports the courts approval of Mr. Herrera's consent.

The trial court next properly terminated Mr. Herrera's parental rights after approving his consent. RCW 26.33.120 specifies the grounds for terminating a parent-child relationship. RCW 26.33.120(3) states, "The parent-child relationship of a parent . . . may be terminated if the parent . . . fails to appear after being notified of the hearing." Here, the Rodriguezes notified Mr. Herrera of the hearing on the termination of his parental rights. He did not appear. This basis gives the trial court grounds to terminate the parent-child relationship.

Given all, we hold the trial court did not err when approving Mr. Herrera's adoption consent and in terminating his parental rights.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

No. 32169-0-III
*In re Adoption of Infant G.-C.*

Affirmed.

Brown, A.C.J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.